# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No.  98-2671

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff-Appellee, | * |
| | * |
| v. | * |
| | * Appeal from the United States |
| Jimmie C. Johnson, | * District Court for the District of |
| | * Nebraska. |
| Defendant-Appellant. | * |
| | * |
| | * |

_____

Submitted: January 12, 1999
Filed: February 8, 1999

_____

Before BOWMAN, Chief Judge, MURPHY, Circuit Judge, and ALSOP,[*] District
Judge.

_____

MURPHY, Circuit Judge.

Jimmie C. Johnson was convicted by a jury of conspiracy to distribute and
possess with intent to distribute cocaine base (crack cocaine) in violation of 21 U.S.C.

___

[*]The Honorable Donald D. Alsop, United States District Judge for the
District of Minnesota, sitting by designation.

§§ 841(a)(1) and 846, and 18 U.S.C. § 2. He was sentenced by the district court[1] to life imprisonment, and he raises a number of issues on his appeal. He argues that this federal prosecution is barred by double jeopardy, that the method used to make up jury panels in the District of Nebraska is unconstitutional, that several evidentiary rulings require reversal, and that the court erred in calculating his sentence.[2] We affirm.

## I.

Jimmie C. Johnson was arrested on federal charges on May 24, 1996 and indicted on one count of conspiracy to distribute crack. Johnson and his brother Jerry were alleged to have been central figures in a conspiracy which procured crack cocaine in Omaha for resale in Lincoln. Numerous witnesses testified at trial regarding their drug dealings with Johnson, providing evidence that Stacy Horn, Heather Roberts, Lori Howard, Penny McIntosh, Albert Lucky Williams, and others sold crack they received from him. Witnesses also provided evidence that Johnson personally cut and packaged crack cocaine for resale, that he directed the selling activities of others, and that he assisted in the collection of drug debts.

Lori Howard was one key prosecution witness. She testified that during 1995 and 1996 she sold crack for Johnson and that during 1996 he came to her house at least twice to package and sell crack. She also testified that Johnson and his brother Jerry had physically and sexually assaulted her because of a cocaine debt. She stated that Jerry Johnson found her hiding in the closet of a friend's house, hit her, and forced her into an automobile. He told her that she would have to get the money she owed his brother and forced her to have sex with him, then sodomized her with transmission

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[2]Johnson raises additional arguments in a supplemental pro se brief which are without merit.

fluid. He called Johnson for further directions and drove her to York, Nebraska where she was placed in Johnson's automobile and forced to perform oral sex on him. Howard said Johnson then threatened that she would be "found in a river" if she did not get the money to him by 11:00 that morning.

Lincoln Police Officer Gregory Sorensen testified about an interview he had with Johnson in April 1996 while he was investigating the reported assault on Lori Howard. After speaking with his attorney, Johnson agreed to discuss the alleged assault with Sorensen, but said he was not willing to answer questions about other potentially incriminating issues. During the interview, Sorensen told Johnson that Lori Howard said the reason she owed Johnson money was over drugs. Johnson said that was not true and that he had loaned her money to pay her rent. Sorensen asked Johnson whether he would normally give somebody five hundred dollars for rent, and Johnson responded, "what they call me in the streets is a, is a kind dope dealer."

Johnson was found guilty after a six day jury trial, and the court then held a two day sentencing hearing. Johnson raised objections to the presentence report and requested a downward departure. The court heard additional testimony related to the disputed facts. It found that Johnson was responsible for at least 500 to 1500 grams of cocaine base and then assessed a two level enhancement for possession of a deadly weapon, a four level enhancement for his role in the offense, a two level enhancement for use of a minor, and a two level enhancement for obstruction of justice. Johnson's base offense level was determined to be 43,[3] and his past criminal history was found to warrant a criminal history score of IV. He was sentenced to life imprisonment.

Prior to this federal indictment and conviction, Johnson had been convicted of a state drug offense. An April 1995 search of his residence had revealed cocaine, marijuana, and a significant amount of cash, and he was charged in the district court

---

[3]The total level was actually 46, but was reduced to the maximum provided in the sentencing guidelines. See U.S.S.G. Ch.5 Pt. A, comment (n.2).

in Lancaster County with possession with intent to distribute a controlled substance. He ultimately negotiated a plea agreement with county attorney James Rocke. In exchange for his plea of guilty to the lesser charge of possession of a controlled substance, the state agreed not to bring additional charges related to its investigation. Johnson's plea was entered on October 12, 1995. He was sentenced to two to four years imprisonment, but released pending appeal.

Johnson and his brother Jerry were initially indicted by a federal grand jury in May 1996 for a conspiracy alleged to have run from January 1995 through at least May 23, 1996, but a superseding indictment alleged that it had begun in November 1994. After Johnson raised a double jeopardy challenge, the government dismissed the indictment and filed a new one alleging a conspiracy beginning October 13, 1995 -- one day after the entry of Johnson's guilty plea to the state charges. The United States Attorney's office assigned primary responsibility for prosecuting the federal case to Richard E. Rothrock, a Lancaster County attorney who had also been serving as a Special Assistant United States Attorney since September 1995.

II.

On appeal, Johnson raises constitutional, evidentiary, and sentencing issues. He argues that the federal prosecution violated his Fifth Amendment right not to be placed in double jeopardy and that the method used by the District of Nebraska for impaneling jurors violated his Sixth Amendment right to trial by a fair cross section of the community. He also asserts that it was reversible error for the district court to admit evidence of the assault on Lori Howard, to allow government witnesses to testify pursuant to cooperation agreements, and to fail to suppress his incriminating statement to officer Sorensen. Finally, he argues the court erred in calculating the amount of cocaine for which he was held responsible and in enhancing his base offense level for possessing a dangerous weapon, for his role in the offense, for use of a minor, and for obstruction of justice. He seeks dismissal of the indictment, a new trial, or

resentencing.

A.

Johnson argues that his federal prosecution is barred by the double jeopardy clause because it amounted to a second state prosecution for the same conduct. The district court disagreed, and the standard of review for this issue is de novo. United States v. Brekke, 97 F.3d 1043, 1046-47 (8th Cir. 1996).

The dual sovereignty doctrine provides that although a defendant may not be prosecuted twice by the same sovereign for the same acts, a subsequent prosecution by a separate sovereign does not violate the Constitution. Abbate v. United States, 359 U.S. 187 (1959); United States v. Basile, 109 F.3d 1304, 1306-07 (8th Cir. 1997). Nevertheless, a state prosecution that is merely "a sham and a cover for a federal prosecution" such that it is in essence a second federal prosecution may violate the double jeopardy clause. Bartkus v. Illinois, 359 U.S. 121, 124 (1959). The scope of this exception remains somewhat unclear. Compare Basile, 109 F.3d at 1307 (noting that this court has never explicitly held that the Bartkus exception applies when a federal prosecution follows a state prosecution -- the reverse of the situation in Bartkus), with United States v. Williams, 104 F.3d 213, 216 (8th Cir. 1997) (facts analyzed as if Bartkus exception were applicable to federal prosecution after a state prosecution); United States v. Garner, 32 F.3d 1305, 1310 (8th Cir. 1994) (same). It is not necessary to define the exact scope of the exception here because the facts of this case do not establish that there was a sham prosecution.

Cooperation between local and federal law enforcement officers does not in itself affect the identity of the prosecuting sovereign. Bartkus, 359 U.S. at 123; United States v. Moore, 822 F.2d 35, 38 (8th Cir. 1987); see also United States v. All Assets of G.P.S. Automotive Corp., 66 F.3d 483, 495 (2nd Cir. 1995) ("And every circuit to consider the issue has also held that the cross-designation of a state district attorney as

a federal official to assist or even to conduct a federal prosecution does not by itself bring a case within the <u>Bartkus</u> exception to the dual sovereignty doctrine."). The critical factor is whether or not the sovereign bringing the second prosecution was acting independently. <u>Bartkus</u>, 359 U.S. at 124.

The state and federal prosecutions of Johnson were conducted independently by different prosecutors. The state prosecution and plea negotiations were handled by a deputy county attorney, James Rocke. Assistant United States Attorney Michael G. Heavican later assigned Richard E. Rothrock to handle the federal prosecution. Rothrock was at that time a county attorney holding a dual appointment as a Special Assistant United States Attorney beginning in September 1995. No evidence was produced to indicate that Rothrock had been involved in the state prosecution and plea agreement or that he went to work on the federal side only to prosecute Johnson. The state court plea agreement and conviction occurred one year before the federal indictment, and no federal officials were involved in it. As the Fifth Circuit has noted "'unless a federal agent actually participates in a state court plea bargain, subsequent prosecution in federal court does not violate the defendant's constitutional rights.'" <u>United States v. Harrison</u>, 918 F.2d 469, 475 (5th Cir. 1990) (citation omitted). The district court did not err in determining that the federal prosecution did not violate Johnson's rights against double jeopardy.

B.

At the time of Johnson's trial, potential jurors in the district of Nebraska were selected exclusively from voter registration lists. Johnson claims that this method of selection violated his Sixth Amendment rights and points to evidence that the voter registration lists under-represented Hispanic and black populations. He identifies himself as African-American or black, and he was convicted by a petit jury that did not contain any people of color. He alleges that the process systematically excludes Hispanics and blacks.

The process formerly used in the district of Nebraska to summon jurors from voter registration lists has recently been upheld by this court against a similar constitutional challenge.  United States v. Sanchez, 156 F.3d 875 (8th Cir. 1998).  Only the court sitting en banc could reconsider the issue.  See, e.g., Malone v. Vasquez, 138 F.3d 711, 718 (8th Cir. 1998).

## C.

The government presented evidence at trial regarding allegations that Johnson and his brother Jerry physically and sexually assaulted Lori Howard because of an unpaid crack debt.  Johnson argues that this evidence should have been excluded as irrelevant and unduly prejudicial.  A district court's evidentiary decisions are reviewed for abuse of discretion.  United States v. Mosby, 101 F.3d 1278, 1282 (8th Cir. 1996).

Evidence of the assault on Howard was relevant to show means used by the Johnsons to obtain payment of a drug debt in furtherance of the conspiracy to distribute cocaine.  In deciding if evidence is unduly prejudicial, the court should consider "'the degree of unfairness of the prejudicial evidence and whether it tends to support a decision on an improper basis.'"  United States v. Dierling, 131 F.3d 722, 730 (8th Cir. 1997)(citation omitted).  In Dierling, it was not error to allow testimony about the display of an associate's decapitated head because the evidence illustrated the means used by the conspirators to enforce the rules of their drug business.  Id. at 731.  Similarly, the district court here did not abuse its discretion in determining that the assault evidence was relevant to Johnson's drug dealings and that its probative value outweighed any prejudicial effect.

## D.

Johnson also challenges the court's refusal to suppress a statement he made in

an interview with officer Sorensen when he said that he was a "kind dope dealer." Before the interview Johnson spoke with his attorney and told Sorensen that he would answer questions about the Howard assault, but that he would not answer questions about other potentially incriminating issues. Johnson now argues that by bringing up the subject of Howard's explanation as to why she owed him money, Sorensen violated his rights under the Fifth Amendment and Miranda v. Arizona, 384 U.S. 436 (1966). See Michigan v. Mosley, 423 U.S. 96, 104 (1975); Otey v. Grammar, 859 F.2d 575, 579 (8th Cir. 1980) ("The admission of statements obtained after a person in custody has decided to remain silent depends on whether his right to cut off questioning has been scrupulously honored."). The court's ultimate determination of whether there was a constitutional violation is reviewed de novo, and its findings of fact are reviewed for clear error. United States v. Byrne, 83 F.3d 984, 988 (8th Cir. 1996).

A person in custody may selectively waive the right to remain silent by indicating a willingness to answer only certain questions. Otey v. Grammar, 859 F.2d 575, 579 (1980). When approached by officer Sorensen, Johnson indicated that he would answer questions about the alleged assault, but no other potentially incriminating issues. We have reviewed the taped interview by Sorensen, and he did not initially ask any question when he brought up Howard's statement that she owed Johnson money over drugs. Before mentioning the statement, however, he said that this could be a question Johnson might not want to answer. Johnson did nothing to suggest that a question had been raised outside the permissible scope of the interview. Instead, he responded that Howard's statement was not true and affirmed that he had loaned her the money for rent. Sorensen then asked him whether he would normally give someone five hundred dollars for rent. Johnson proceeded to answer this question by explaining that he was considered a "kind dope dealer." The interview remained focused on the assault on Howard, an assault that she had said was related to a drug debt, and Sorensen gave Johnson an opportunity to refuse to comment. The district court's findings that Johnson volunteered the incriminating statement and that Sorensen did not unscrupulously violate Johnson's right to cut off any questioning are

not clearly erroneous.  We conclude that Johnson's <u>Miranda</u> rights were not violated.

E.

Johnson argues that the testimony of several government witnesses who testified pursuant to cooperation agreements should have been suppressed because it was obtained in violation of 18 U.S.C. § 201(c)(2).  Since Johnson failed to object to the testimony of these witnesses at trial, the standard of review would ordinarily be for plain error only.  <u>United States v. Millard</u>, 139 F.3d 1200, 1203 (8th Cir. 1998).

18 U.S.C. § 201(c)(2) is a criminal statute making it illegal for "whoever" to give anything of value to another for testimony under oath at trial.  Johnson argues that section 201(c)(2) applies to cooperation agreements made by prosecutors.  <u>See</u>  <u>United States v. Singleton</u>, 144 F.3d 1343 (10th Cir. 1998), <u>rev'd en banc</u>, <u>United States v. Singleton</u>, ___ F.3d ___, 1999 WL 6469 (10th Cir. Jan. 8, 1999); <u>United States v. Lowery</u>, 15 F. Supp. 2d 1348 (S.D. Fla. 1998).  This argument has now been rejected by the circuits which have considered it.  <u>United States v. Singleton</u>, ___ F.3d ___, 1999 WL 6469 (10th Cir. Jan. 8, 1999) (en banc); <u>United States v. Haese</u>, 162 F.3d 359 (5th Cir. 1998); <u>United States v. Ware</u>, 161 F.3d 414 (6th Cir. 1998).  We agree that the statute does not sweep so broadly as to prevent prosecutors from offering leniency to an individual in exchange for truthful testimony.  We have previously recognized that such plea agreements are not unlawful.  <u>United States v. Garcia</u>, 785 F.2d 214, 221 (8th Cir. 1986) ("a plea agreement that grants favors to a prosecution witness in return for truthful testimony about the defendant is not unlawful").  Section 201(c)(2) cannot be considered in isolation since courts and prosecutors are authorized to consider substantial assistance in the sentencing process.  <u>See</u> 18 U.S.C. § 3553(e); <u>see also</u> U. S. Sentencing Guidelines Manual §§ 5K1.1 [U.S.S.G.]; <u>Singleton</u>, 1999 WL 6469, at *6 (Lucero, J. concurring).  The court did not err in permitting the testimony of the cooperating witnesses.

F.

Johnson asserts that several of the court's factual findings at sentencing were clearly erroneous. He argues that the court erred in accepting the testimony of government witnesses regarding the quantity of crack cocaine attributable to Johnson and that it erred in increasing his base offense level for use of a weapon (U.S.S.G. § 2D1.1(b)(1)), for his role in the offense (U.S.S.G. § 3B1.1(a)), for using a minor (U.S.S.G. § 3B1.4), and for obstructing justice (U.S.S.G. § 3C1.1). The United States argues that the court did not err in rejecting the objections after a full trial and a two day evidentiary hearing and that it properly calculated his base level to be 43. The district court's findings of fact at sentencing are reviewed for clear error. United States v. Brown, 148 F.3d 1003, 1007 (8th Cir. 1998).

The district court held Johnson accountable for between 500 and 1500 grams of crack cocaine, resulting in a base offense level of 36. Johnson argues the appropriate quantity was between 50 and 150 grams. When "determining base offense levels, the district court may rely upon evidence including drug prices and organizational capability to approximate total drug quantities beyond the amount of drugs actually seized." United States v. Padilla-Pena, 129 F.3d 457, 467 (8th Cir. 1997) (citation omitted). In such circumstances, it is proper to rely on the testimony of witnesses to establish drug amounts. United States v. Dierling, 131 F.3d 722, 736 (8th Cir. 1997). The district court determined that the government reliably established that the court could conservatively hold Johnson accountable for between 1080 and 1419.67 grams of crack. This finding was based on testimony introduced at trial and at the sentencing hearing from an undercover officer and several individuals involved in Johnson's distribution network. Johnson alleges that the court did not judge the credibility of the testimony properly so its quantity finding is clearly erroneous. The district court, however, is best able to assess the value of testimony in light of corroborating and conflicting evidence, witness demeanor, and numerous other factors; its findings regarding witness credibility are thus given great deference and are "'virtually

unreviewable on appeal.'" <u>United States v. Adipietro</u>, 983 F.2d 1468, 1472 (8th Cir. 1993).

The district court also increased Johnson's base offense level pursuant to U.S.S.G. § 2D1.1(b)(1), after it found that he had used a dangerous weapon, a baseball bat, as part of the conspiracy. Johnson argues this finding was clearly erroneous. Section 2D1.1(b)(1) indicates that the base offense level should be increased by two levels if a dangerous weapon was possessed, and a "dangerous weapon" is defined as "an instrument capable of inflicting death or great bodily harm." U.S.S.G. § 1B1.1, comment (n.1). A baseball bat, when used as a club, meets this definition, <u>see, e.g</u>, <u>United States v. Kushmaul</u>, 147 F.3d 498 (6th Cir. 1998), and the court did not clearly err in accepting Odell Reed's testimony that both Jimmie and Jerry Johnson beat him with baseball bats.

The guidelines also provide for a four level enhancement if the defendant was an organizer or leader of criminal activity involving five or more participants. U.S.S.G. § 3B1.1(a). More than five individuals, including Jerry Johnson, Albert Lucky Williams, Percy Webster, Odell Reed, Penny McIntosh, Stacy Horn, Lori Howard, and Heather Roberts, testified that they were involved in the conspiracy. The district court found that Johnson was the "CEO" of the operation and that he directed the crack selling activities of Williams, Howard, Horn, and Roberts, directed drug debt collection activities, directed the kidnaping and sexual assault of Howard, packaged and cooked crack, and had others cook and test crack for him. These findings were based on testimony at trial and the sentencing hearing and were not clearly erroneous.

Johnson also challenges the increases added under U.S.S.G. § 3B1.4 and § 3G1.4. He argues the court erred in finding that he used a minor, Heather Roberts, to commit the offense. The court did not clearly err in accepting testimony that Roberts sold crack for Johnson and that he was aware of her age because she had told him about it when he helped secure her release from a juvenile detention facility. This

evidence provided a proper basis for a two level enhancement under U.S.S.G. § 3G1.4. Johnson also asserts that the court clearly erred in finding that he obstructed justice. This finding, based on testimony by Williams that Johnson attempted to have him sign a false affidavit, was not erroneous and supported an enhancement under U.S.S.G. § 3C1.1 for obstruction of justice.

## III.

After carefully examining the record, we conclude Johnson is not entitled to prevail on any of his constitutional, evidentiary, or sentencing issues. The judgment of the district court is therefore affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.