UNITED STATES of America, Plaintiff–Appellee,

v.

Robert Cooper SMITH, Defendant–Appellant.

No. 98–10297.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 4, 1999.[1]

Filed Nov. 12, 1999.

---

1. For this reason I do not reach the immunity issues.

1. The panel unanimously finds this case to be suitable for decision without oral argument. See FED. R. APP. P. 34(a)(2).

Steven L. Crawford, Fresno, California, for the defendant-appellant.

Jonathan B. Conklin and Mark E. Cullers, Assistant United States Attorneys, Fresno, California, for the plaintiff-appellee.

Before: PREGERSON and WIGGINS, Circuit Judges, and CARTER, District Judge.[2]

WIGGINS, Circuit Judge:

Robert Cooper Smith appeals his conviction and sentence for corruption-related offenses committed during his tenure as a city councilman for the city of Fresno, California. In this opinion, we resolve a sentencing issue, an evidentiary matter, and whether 18 U.S.C. § 201(c)(2) prohibits the government from granting immunity to cooperating witnesses. We have jur-

isdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM.

## I.

Smith served on the Fresno city council between May 1991 and June 1994. During that time, he misappropriated campaign money for personal use, solicited and accepted bribes in exchange for his vote on matters before the city council, covered up these activities, and filed false tax forms. An FBI investigation into his conduct eventually led to his indictment on fourteen federal counts.

During trial, the government called on a number of witnesses to testify against Smith. These witnesses included Jon Thomason, a local real-estate developer who had allegedly paid a $5,000 bribe to Smith and made illegal contributions to other local politicians. Smith sought to introduce extrinsic evidence to contradict certain parts of Thomason's testimony, but the district court excluded this evidence pursuant to Rule 608(b) of the Federal Rules of Evidence. Prior to trial, the government had agreed to immunize Thomason from federal prosecution and to notify relevant authorities of his cooperation if he would assist the government in its investigation and prosecution of Smith. While on the witness stand, Thomason admitted that his desire to avoid prosecution for his role in bribing local politicians motivated him to cooperate with the government.

On April 17, 1998, a jury convicted Smith on ten of the fourteen counts in his indictment,[3] including one count of money laundering in violation of 18 U.S.C. § 1956(a)(1) and two counts of extortion under color of official right in violation of 18 U.S.C. § 1951. On June 30, 1998, the district court sentenced Smith to 78

---

**2.** The Honorable David O. Carter, United States District Court Judge for the Central District of California, sitting by designation.

**3.** Specifically, the jury found Smith guilty of one count of racketeering in violation of 18 U.S.C. § 1962(c); three counts of honest services mail fraud in violation of 18 U.S.C.

§§ 1341 & 1346; three counts of filing false tax returns in violation of 26 U.S.C. § 7206(1); one count of money laundering in violation of 18 U.S.C. § 1956(a)(1); and two counts of extortion under color of official right in violation of 18 U.S.C. § 1951.

months custody but temporarily stayed its decision in order to consider whether the sentence should be enhanced for abuse of position of trust. On July 8, 1998, the district court decided that enhancement was proper, increased Smith's sentence to 96 months, and entered final judgment.

Smith now appeals, raising three arguments before this panel: (1) He contends that enhancement of his sentence on account of abuse of position of trust constituted impermissible double counting in violation of the Sentencing Guidelines. (2) He alleges that the district court erred when it precluded him from introducing extrinsic evidence to refute certain parts of Thomason's testimony. (3) He claims that 18 U.S.C. § 201(c)(2), which criminalizes the bribery of witnesses, prohibits the government from conferring immunity upon cooperating witnesses, and therefore Thomason's testimony should be excluded. For the reasons below, we reject all three of Smith's arguments.

## II.

■ This panel reviews de novo challenges to the interpretation and application of the Sentencing Guidelines. *See United States v. Bailey*, 139 F.3d 667, 667 (9th Cir.1998). We find that the district court appropriately enhanced Smith's sentence.

■ In sentencing Smith, the district court grouped all ten counts together into a single group and determined that the money laundering count carried the highest offense level for the group at 23. It next added a two-point enhancement for obstruction of justice. It then added another two points for abuse of position of trust, ruling that this second enhancement was permissible because abuse of position of trust was not an element of the money laundering offense.

Smith challenges this second enhancement, relying in effect on a three-part argument: (1) The district court grouped the money laundering count together with the counts for extortion under color of official right. (2) Extortion under color of official right inherently involves an abuse of position of trust. (3) Accordingly, the sentence for the group may not be enhanced for abuse of position of trust because the extortion counts already accounted for the abuse. Smith does not challenge the district court's factual finding that he abused a position of trust. He also does not challenge the grouping of the extortion counts together with the money laundering count.

We reject Smith's argument because he mischaracterizes the methodology used to compute his sentence. In the instant case, the district court relied on Section 3D1.2(d) of the Sentencing Guidelines to group the ten counts together on the basis that they all involved substantially the same harm. Under Section 3D1.3(b), when the court determines the sentence for crimes grouped together pursuant to Section 3D1.2(d), it first evaluates the offense level for each count within the group and then sets the base sentence for the group by reference to the count with the highest offense level. In other words, under Sections 3D1.2(d) & 3D1.3(b), only the highest level count counts; all other counts are ignored for the purposes of determining the base sentence. *See United States v. Savage*, 67 F.3d 1435, 1444 (9th Cir. 1995) (finding that counts with lower offense levels were not used to calculate the final sentence for the group).

■ The grouping of the two counts for extortion under color of official right together with the count for money laundering did not result in impermissible double counting because the district court based the base sentence solely on the money laundering count. "Impermissible double counting occurs only when 'one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines.'" *United States v. Alexander*, 48 F.3d 1477, 1492 (9th Cir.1995) (quoting *United States v. Reese*, 2 F.3d 870, 895

(9th Cir.1993)). Because the district court ignored the extortion counts when it set the base sentence, double counting would have occurred only if abuse of position of trust were an element of money laundering. *See United States v. Nagra,* 147 F.3d 875, 883 (9th Cir.1998) (stating that double counting usually occurs when an element is counted twice in computing the total offense level); *United States v. Haggard,* 41 F.3d 1320, 1327 (9th Cir.1994) ("There is no double counting if the extra punishment is attributable to different aspects of the defendant's conduct."). Smith has not claimed that abuse of position of trust is an element of money laundering, and indeed, the very case on which he relies to challenge his sentence held that money laundering counts may be enhanced for abuse of position of trust because such abuse is not an element of the crime. *See United States v. Calozza,* 125 F.3d 687, 690–91 (9th Cir.1997); *see also United States v. Duran,* 15 F.3d 131, 134 (9th Cir.1994) (upholding abuse-of-position-of-trust enhancement of deputy sheriff's sentence for laundering money seized from drug dealers).

Smith's reliance on *Calozza* is misguided because *Calozza* is distinguishable from this case. In *Calozza,* 125 F.3d at 692–95, we vacated the defendant's sentence because the district court added an abuse-of-position-of-trust enhancement simultaneously to two groups of offenses. Central to the finding of double counting was our belief that the wrongs and victims of the first group (money laundering) differed from those of the second group (fraud), and thus enhancement of both groups would punish the defendant twice for only one set of abuse of position of trust. *See id.* at 692. Put more simply, the district court in *Calozza* erred because it used the enhancement twice when it only should have used it once.

The same double counting that occurred in *Calozza,* however, did not occur here because the district court applied the enhancement only once. And when it did

apply the enhancement, it applied it to a base sentence which had not yet accounted for Smith's abuse of position of trust.

### III.

■ We review evidentiary rulings for abuse of discretion. *See United States v. Figueroa–Lopez,* 125 F.3d 1241, 1244 (9th Cir.1997). Smith claims that the district court erred when it precluded him from introducing extrinsic evidence to challenge Thomason's testimony. We disagree.

■ During trial, Thomason testified about the various ways in which he had illegally funneled money to Smith. The government then asked Thomason whether Smith was the only politician whom he had "given money to in this type of fashion." Trial Transcript at 529. Thomason replied that Smith was not. With the exception of this statement, Thomason made no other references on direct examination to illegal contributions that he had allegedly made to politicians besides Smith.

On cross-examination, Smith questioned Thomason about statements he had made to the FBI about his illegal dealings with other politicians. These statements were made prior to trial during the course of the FBI's investigation into political corruption in Fresno. In an effort to discredit Thomason, Smith sought to call as witnesses three people who had allegedly received illegal contributions from Thomason. According to Smith, these witnesses would challenge the veracity of the statements Thomason had made to the FBI concerning corruption on the part of other politicians. The district court precluded Smith from calling these three witnesses. Smith challenges this preclusion, arguing that he should have been allowed to call the witnesses under Rule 404(b) of the Federal Rules of Evidence to show a plan on the part of Thomason to fabricate lies about different politicians in order to avoid prosecution. Evidence of such a plan, argues Smith, was probative of Thomason's bias in favor of the government.

This evidence clearly was excludable under Rule 403 because its probative value, if any, was substantially outweighed by the danger of confusing the issues, of misleading the jury, and of needlessly presenting cumulative evidence. *See* FED. R. EVID. 403. As the district court noted, to the extent that Thomason was biased in favor of the government, such bias had been established by Thomason's own admissions (1) of wanting to curry favor with the government in order to avoid prosecution and (2) of lying to cover up his own involvement in bribing local politicians. Our review of the record supports this conclusion. Extrinsic evidence seeking to prove some plan on the part of Thomason to lie to protect his hide would not have added significantly to the inference of bias that one could have drawn from Thomason's own testimony about his motives. Accordingly, we find no abuse of discretion in the district court's evidentiary ruling that precluded Smith from calling the three witnesses.

### IV.

■ As his final claim, Smith contends that the government's grant of immunity to Thomason and its agreement to notify relevant authorities of Thomason's cooperation constituted the giving of something of value for testimony in violation of 18 U.S.C. § 201(c)(2).[4] Such testimony, argues Smith, was therefore illegally obtained and should have been excluded. Because Smith did not object to Thomason's testimony during trial, we review the use of Thomason's testimony for plain error. *See United States v. Nazemian,* 948 F.2d 522, 525 (9th Cir.1991).

Smith raises an argument that has been rejected by every circuit that has considered it. *See, e.g., United States v. Hunte,* 193 F.3d 173 (3d Cir.1999); *United States v. Stephenson,* 183 F.3d 110 (2d Cir.1999); *United States v. Lara,* 181 F.3d 183 (1st Cir.1999); *United States v. Condon,* 170 F.3d 687 (7th Cir.1999); *United States v. Johnson,* 169 F.3d 1092 (8th Cir.1999); *United States v. Lowery,* 166 F.3d 1119 (11th Cir.1999); *United States v. Singleton,* 165 F.3d 1297 (10th Cir.1999) (en banc); *United States v. Ramsey,* 165 F.3d 980 (D.C.Cir.1999); *United States v. Haese,* 162 F.3d 359 (5th Cir.1998); *United States v. Ware,* 161 F.3d 414 (6th Cir. 1998). Recently, we ruled that the government's promise of leniency to a cooperating witnesses does not violate 18 U.S.C. § 201(c)(2). *See United States v. Mattarolo,* 191 F.3d 1082, 1089 (9th Cir.1999).

■ Given the indistinguishable difference between leniency and immunity, *Mattarolo* is on point, and therefore Smith's claim must fail. Even if *Mattarolo* were distinguishable, however, we find no plain error because we agree with our sister circuits that 18 U.S.C. § 201(c)(2) does not prohibit the government from conferring immunity upon cooperating witnesses in exchange for testimony. *See Mattarolo,* 191 F.3d at 1089; *see also United States v. Flores,* 172 F.3d 695, 699–700 (9th Cir. 1999) (finding no plain error).

The opinions of our sister circuits discuss in great detail the many reasons for which Smith's argument should be rejected. We find these reasons to be persuasive, but in the interest of brevity, we decline to discuss them here except by summary reference. *See, e.g., Hunte,* 193 F.3d at 176 (finding "nothing in the statute that even approaches the type of clear statement" that would be expected had Congress intended 18 U.S.C. § 201(c)(2) to prohibit leniency-for-testimony agreements); *Stephenson,* 183 F.3d at 118 (hold-

---

4. The statute states in relevant part:
   Whoever ... gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court ... authorized by the laws of the United States to hear evidence or take testimony ... shall be fined under this title or imprisoned for not more than two years, or both.
   18 U.S.C. § 201(c)(2).

ing that "18 U.S.C. § 201(c)(2) does not apply to the United States or to any Assistant United States Attorney acting within his or her official capacity"); *Lara*, 181 F.3d at 197–98 (finding that 18 U.S.C. § 201(c)(2) does not apply "to the federal sovereign *qua* prosecutor"); *Condon*, 170 F.3d at 689–90 (finding that forgoing criminal prosecution is not a "thing of value" within the meaning of 18 U.S.C. § 201(c)(2)); *Johnson*, 169 F.3d at 1097–98 ("Section 201(c)(2) cannot be considered in isolation since courts and prosecutors are authorized to consider substantial assistance in the sentencing process."); *Lowery*, 166 F.3d at 1122–24 (rejecting plain-language challenge to 18 U.S.C. § 201(c)(2)); *Singleton*, 165 F.3d at 1299–1302 (refusing to interpret the word "whoever" to include government agents acting within the scope of their authority to exercise the government's prosecutorial powers) (citing the absence of clear language indicating Congressional intent to overturn such "an ingrained aspect of American legal culture" as leniency for testimony); *Ramsey*, 165 F.3d at 986–91 (arguing that a plain language interpretation of 18 U.S.C. § 201(c)(2) would be absurd because it would conflict with statutory schemes designed to reward cooperating witnesses) (finding no legislative history to indicate that Congress intended 18 U.S.C. § 201(c)(2) to apply to the government); *Haese*, 162 F.3d at 366–68 (refusing to interpret 18 U.S.C. § 201(c)(2) as prohibiting leniency in exchange for truthful testimony because such an interpretation would shackle the government's ability to enforce the law); *Ware*, 161 F.3d at 418–24 (citing *Nardone v. United States*, 302 U.S. 379, 383, 58 S.Ct. 275, 82 L.Ed. 314 (1937), for the proposition that "the general words of a statute do not include the government or affect its rights unless the text of the statute expressly includes the government") (finding that interpreting 18 U.S.C. § 201(c)(2) to prohibit a prosecutor's offer

of lenity would conflict with other federal laws). Because of our general agreement with the reasoning of our sister circuits, we write only to emphasize three points.

First, we emphasize the importance of reading 18 U.S.C. § 201(c)(2) in light of the extensive substantive and procedural framework that Congress has created for bargaining between the government and potential witnesses, *see generally Singleton*, 165 F.3d at 1305–08 (Lucero, J., concurring) (discussing statutory incentives for cooperating witnesses), and in light of the government's widespread, long-standing practice of offering leniency for cooperation, *see generally Kastigar v. United States*, 406 U.S. 441, 445–47, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (summarizing the history of immunity statutes in the United States). We do not go so far as holding that 18 U.S.C. § 201(c)(2) excludes the government and its agents in all cases,[5] but it is clear, for the reasons cited by our sister circuits, that Congress would have legislated more expressly if it had intended for 18 U.S.C. § 201(c)(2) to prohibit the government from conferring immunity, leniency, and other traditionally permissible benefits upon cooperating witnesses in the course of a legitimate prosecution.

Second, our holding is consistent with past decisions in which we have affirmed convictions notwithstanding the fact that the government conferred benefits upon its witnesses. *See, e.g., United States v. Cuellar*, 96 F.3d 1179 (9th Cir.1996) (upholding conviction even though the government's witness was paid fees contingent on his participation in an investigation and on the results of any subsequent criminal or civil proceedings related thereto); *United States v. Moody*, 778 F.2d 1380, 1384–85 (9th Cir.1985), *amended by* 791 F.2d 707 (9th Cir.1986) (refusing to exclude testimony obtained pursuant to a plea bargain which granted leniency to the witness);

---

**5.** For example, 18 U.S.C. § 201(c)(2) might apply to a wayward prosecutor who bribes a witness to lie on the stand.

*Darden v. United States,* 405 F.2d 1054, 1056 (9th Cir.1969) ("The fact of a bargain, or of the hope or expectation of leniency, affects only the weight of the testimony, not its admissibility."). These cases uphold the principle that the government's grant of certain benefits in exchange for testimony is not fatal to the use of such testimony against a defendant.

Third, we note that even if Smith were correct, he offers no basis for transforming 18 U.S.C. § 201(c)(2) into an exclusionary rule. The use of the exclusionary rule is an exceptional remedy typically reserved for violations of constitutional rights. *See United States v. Harrington,* 681 F.2d 612, 615 (9th Cir.1982). Smith does not claim that his constitutional rights have been violated, and even if he did, the Supreme Court has ruled that the use of testimony from witnesses who receive leniency and money from the government for their cooperation does not constitute a per se violation of a defendant's due process rights. *See Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). Moreover, *United States v. Frazin,* 780 F.2d 1461, 1466 (9th Cir.1986), prohibits judicial creation of a remedy for a statutory violation when the statute itself already articulates the remedy. In the instant case, 18 U.S.C. § 201(c)(2) provides the mechanism for enforcing its provisions: criminal prosecution leading to imprisonment and/or fine. Consequently, even if Smith were correct about 18 U.S.C. § 201(c)(2)'s alleged prohibition, the appropriate manner to enforce the statute would be to prosecute the prosecutors who granted immunity to Thomason. It would not be to exclude Thomason's testimony. *See Condon,* 170 F.3d at 689; *Ramsey,* 165 F.3d at 991; *Haese,* 162 F.3d at 367–68.

AFFIRMED.