**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jack TSAI, Defendant–Appellant.**

No. 00–10309.
D.C. No. CR–98–00371–SI.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 17, 2001.

Decided July 10, 2001.

Before SNEED and SILVERMAN,
Circuit Judges, and LASNIK,* District

---

* The Honorable Robert S. Lasnik, United States District Judge for the Western District

Judge.

## MEMORANDUM **

Appellant Jack Tsai ("Tsai") appeals a final judgment by the district court in a criminal case. After a jury trial, Tsai was convicted of six counts of mail fraud, five counts of money laundering, conspiracy to commit mail fraud, conspiracy to commit money laundering, and making a false statement in a loan application. He argues that the government violated 18 U.S.C. § 201(c)(2) (" § 201(c)(2)") and his due process rights under the Fifth Amendment by offering leniency to a key witness that the government knew or should have known would perjure himself. Tsai also argues that the government did not provide sufficient evidence to sustain his convictions. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

From 1989 until some point in the 1990s, Tsai and Adam Zachs ("Zachs") were partners in an insurance scam conspiracy in which they staged or fabricated automobile accidents and obtained settlements from various insurance companies. Around 1992, two other individuals, Jason Louie ("Louie") and Anthony Kim ("Kim"), became participants in the insurance scam.

In March 1993, Tsai had an unstaged automobile accident. Tsai asked Zachs and his associates to file a claim on his behalf and obtain the highest possible settlement. Tsai contends that he had already withdrawn from the conspiracy and that Zachs was deceiving Louie, keeping two-thirds of the profits for himself and distributing one-third to Louie. Around December 1993, Zachs told Louie that Tsai was no longer a partner but that Tsai would still get a percentage of the cases brought in before that point.

Tsai made trips to Taiwan to launder the profits from the insurance scam and to send the money back to the United States via wire transfer. Tsai utilized the laundered money to buy real estate properties with Zachs. In February 1993, Tsai obtained a mortgage from Coast Federal Bank in the amount of $712,000 for one of the real estate properties. Tsai provided false information to the mortgage broker in order to obtain the mortgage.

In 1995, Zachs and Tsai had a falling out and Zachs asserted that Tsai owed him profits from the partnership. Zachs filed a lawsuit against Tsai to recover his share and filed false declarations in the lawsuit. Eventually, Zachs withdrew his lawsuit.

In 1997, Zachs began cooperating with the government. Tsai and Zachs met a few times in 1997, and Tsai gave Zachs $19,000 at one of the meetings. The government argued that Tsai was giving Zachs this money as a settlement for a civil lawsuit that Zachs had filed and withdrawn. Zachs showed this money to an IRS agent, who photocopied the money and gave it back to Zachs.

On April 3, 1998, Zachs entered into a formal cooperation agreement with the government. He agreed to plead guilty to one count of money laundering and to pay restitution of only $83,000 (which effectively gave him a $253,000 break on the restitution) in exchange for his testimony. The government also agreed it would not file additional charges against Zachs, it would move for a downward departure from the Sentencing Guidelines, it would recommend a concurrent sentence to any sentence he received as a result of the state proceeding, and it would inform other agencies of Zachs' cooperation.

---

of Washington, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

## I. § 201(c)(2) and Due Process

The Court reviews the district court's interpretation of § 201(c)(2), de novo. *See United States v. Garza–Juarez*, 992 F.2d 896, 903 (9th Cir.1993). The threshold question is whether or not § 201(c)(2) applies to the government. § 201(c)(2) states:

> Whoever ... directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court, any committee of either House or both Houses of Congress, or any agency, commission, or officer authorized by the laws of the United States to hear evidence or take testimony, or for or because of such person's absence therefrom ... shall be fined under this title or imprisoned for not more than two years, or both.

This circuit has not explicitly ruled that § 201(c)(2) does not apply to the government, but has never found an instance where the government has violated the statute by offering leniency or payments to a witness. *See United States v. Smith*, 196 F.3d 1034 (9th Cir.1999) (holding that granting immunity in exchange for witness' testimony was not a violation of § 201(c)(2)); *United States v. Mattarolo*, 191 F.3d 1082, 1089 (9th Cir.1999) (finding that the government's promise of leniency to a cooperating witness did not violate § 201(c)(2)). This circuit has gone further and has upheld a contingency fee agreement between the government and an informant, based on the amount of money seized in undercover operations and the outcome of the trial. *See United States v. Cuellar*, 96 F.3d 1179, 1183 (9th Cir.1996) (payment of $580,000 to an informant did not violate the defendant's due process rights or constitute outrageous govern-

ment conduct). The court in *Cuellar* reasoned that the traditional safeguards of rigorous cross-examination and instructions to the jury regarding witness credibility were in place and that no violation occurred.

■ In the instant case, there was extensive cross-examination that highlighted the leniency Zachs received in exchange for his testimony. The jury was fully aware of the $19,000 that was handed to Zachs and the details of his plea agreement. The court instructed the jury to weigh the credibility of Zachs' testimony. As in *Smith*, the jury in this case was made aware that Zachs might have an incentive to lie. Accordingly, the constitutional safeguards were in place, no outrageous government conduct occurred and no due process violation occurred.

■ As for the grant of leniency to Zachs, it is generous but it is not out of the ordinary for this circuit. It is less than the immunity conferred upon the government's witness in *Smith*, and *Smith* did not find that such leniency was something of value prohibited under § 201(c)(2). Thus, the main factual issues are whether the $19,000 given to Zachs and the restitution break of $253,000 violated § 201(c)(2). Even if it were the case that the government paid Zachs $19,000 for his testimony or that a benefit was conferred upon Zachs in the form of a lower restitution limit, this would still not qualify as a violation of § 201(c)(2).*** While *Cuellar* did not involve § 201(c)(2), the facts and the reasoning appear to be analogous. If an enormous amount of money paid to an informant with an incentive to lie was not a due process violation in *Cuellar*, then the $19,000 and the $253,000 break in restitution given to a

*** This is especially true where Zachs already was responsible for the larger restitution amount because of his sentence on the state court prosecution for fraud.

testifying witness cannot be a violation of the anti-bribery statute in the instant case.

## II. *Sufficiency of Evidence*

■ The standard of review for sufficiency of evidence is de novo. *See United States v. Duran,* 189 F.3d 1071, 1078 (9th Cir.1999). The court must view the evidence "in the light most favorable to the prosecution" and determine whether any rational trier of fact could have found the elements of a crime proven beyond a reasonable doubt. *See United States v. Blitz,* 151 F.3d 1002, 1006 (9th Cir.1998). The credibility of witnesses is a jury question not to be reviewed on appeal. *See United States v. Goode,* 814 F.2d 1353, 1355 (9th Cir.1987). A conspirator remains part of the conspiracy and liable for the acts of the conspiracy until he takes an affirmative action to abandon, withdraw from, disavow or defeat the object of the conspiracy. *See United States v. Castro,* 972 F.2d 1107, 1112 (1992). One may still be considered part of the conspiracy when receiving profits from the conspiracy. *See United States v. Walker,* 653 F.2d 1343 (9th Cir. 1981).

■ Zachs, Louie and Kim testified that Tsai was involved in the insurance scam at the Asplund law office after November 1993. The jury's decision to believe such testimony and find that Tsai was still involved in the insurance scam is supported by substantial evidence. There was no testimony or evidence establishing that Tsai had withdrawn from, abandoned, disavowed or attempted to defeat the object of the conspiracy. There is also evidence that Tsai was investing Zachs' profits from the scam in the real estate they jointly owned.

The government established at trial through Kim's testimony that Tsai was involved in the fraudulent scam for his own car accident in March 1993. Again, it was a credibility question for the jury as to whether Kim or Tsai or someone else endorsed Tsai's settlement check for the accident. Hence, viewing the evidence in the light most favorable to the prosecution and recognizing that witness credibility is the province of the jury, this Court finds that the jury was entitled to find that Tsai was a member of the conspiracy after November 1993 and that his receipt of profits from the insurance scam made him liable for mail fraud.

The government established through Zachs' testimony that Tsai was still receiving profits from the insurance scam after November 1993 and that the funds he was receiving were probably laundered. Additionally, while Tsai states he purchased real estate in 1994 with funds obtained prior to June 1993, that money was presumably laundered money from his insurance scams. Viewing the evidence in the light most favorable to the government, the jury was entitled to believe that Tsai was still a member of the conspiracy and still responsible for money laundering.

■ With regards to Tsai's conviction for a false statement on a loan application, the government provided testimony from mortgage broker Edward Wong who stated he obtained information for the loan application during a meeting with Tsai. The loan officer at the bank testified she relied on the loan application to grant the loan. There was no evidence at trial that Tsai signed a blank document. Zachs testified that he and Tsai decided they needed false tax returns to obtain the loan and hired an individual by the name of John Louie for $1000 to create false returns that grossly overstated Tsai's actual income. A reasonable jury could find from the evidence presented that Tsai was involved in the preparation of the false loan application and intended to influence the bank in its decision of whether to fund the loan. Accordingly, the government provided suf-

ficient evidence to sustain all convictions against Tsai.

AFFIRMED.