# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1495

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Sam Larsen, also known as Sammy, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 13, 2005
Filed: November 3, 2005

_____

Before ARNOLD, HANSEN, and MURPHY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Sam Larsen appeals his conviction for conspiracy to distribute a controlled substance, *see* 21 U.S.C. §§ 841(a)(1), 846. Mr. Larsen assigns a number of errors in his appeal, none of which has merit. We therefore affirm the judgment of the district court.[1]

Mr. Larsen was convicted of conspiracy to distribute methamphetamine based on testimony from police officers who set up a transaction with him and testimony

_____

[1]The Honorable John B. Jones, United States District Judge for the District of South Dakota.

from other participants in his drug activities. The transaction that was set up involved Mr. Larsen trading a motorcycle for cash and four ounces of methamphetamine. Evidence of other drug activities by Mr. Larsen came from Darcy Sieve, Mr. Larsen's main supplier of methamphetamine; from Val Donaldson, another customer of Ms. Sieve's; and from Vy Syhavong, Ms. Sieve's main source of methamphetamine, who sold to Mr. Larsen at least once.

When Minnesota police officers arrested Ms. Sieve for distributing methamphetamine, she told them that Mr. Larsen was interested in trading a motorcycle for methamphetamine and put Detective Troy Appel in touch with Mr. Larsen. Detective Appel then set up a meeting with Mr. Larsen and transferred $5,500 and four ounces of methamphetamine to him for a motorcycle. After handing the money and drugs over to Mr. Larsen, officers allowed him to walk to his vehicle and then arrested him. The money and drugs were discovered in Mr. Larsen's pickup truck. Mr. Larsen was convicted in Minnesota state court as a result of this transaction.

At trial, the government introduced evidence of other drug transactions by Mr. Larsen. Ms. Sieve testified to having provided on credit, or "fronted," methamphetamine to Mr. Larsen about fifteen times, with the understanding that he would sell the drugs in Sioux Falls, South Dakota, and use monies earned from those sales to repay her. Another witness, Mr. Syhavong, testified that he fronted seven ounces of methamphetamine to Mr. Larsen on one occasion. And according to Ms. Donaldson's testimony, Ms. Sieve once met with her and Mr. Larsen and sold an ounce of methamphetamine to each of them.

Mr. Larsen argues that his conviction should be overturned for insufficiency of the evidence because Ms. Sieve's testimony was incredible as a matter of law since she was not physically present when Mr. Larsen sold drugs to any of his customers. "We review de novo the sufficiency of the evidence, viewing the evidence in the light

most favorable to the verdict and upholding it if, based on all the evidence and all reasonable inferences, any reasonable juror could find the defendant guilty beyond a reasonable doubt." *United States v. Simon*, 376 F.3d 806, 808 (8th Cir. 2004). Testimony can indeed be incredible as a matter of law, *see United States v. Baker*, 367 F.3d 790, 798 (8th Cir. 2004), but this is not the case here. Ms. Sieve testified that when she rode along with Mr. Larsen in Sioux Falls, she doled out methamphetamine for him to sell and he returned shortly afterward each time with money to pay her. We believe that it is manifest that reasonable jurors could draw the inference that Mr. Larsen was selling the methamphetamine to his customers, as the circumstances suggest. Additionally, Ms. Sieve testified that on approximately fifteen occasions she fronted Mr. Larsen an ounce of methamphetamine with the understanding that he would sell it to his customers and pay her from the proceeds. The sales involved amounts that were inconsistent with mere personal use. Mr. Larsen's insufficiency of the evidence claim must therefore fail.

Mr. Larsen also asserts that his conviction should be overturned because it violated the double jeopardy clause and the federal government's so-called *Petite* policy. We review the denial of a motion to dismiss an indictment on double jeopardy grounds *de novo*. *See United States v. Johnson*, 169 F.3d 1092, 1095 (8th Cir. 1999), *cert. denied*, 528 U.S. 857 (1999). Unlike the case that Mr. Larsen relies on, *United States v. Belcher*, 762 F. Supp 666, 670-71 (W.D. Va. 1991), which held that a federal prosecution was a "sham and cover" for an unsuccessful state case brought against the defendant by a prosecutor who represented both the state and federal government in the same county, here the prosecutions were carried out by different sovereigns and different individuals. The facts related to the motorcycle trade, which formed the basis for Mr. Larsen's Minnesota conviction, were subsequently tied to a conspiracy involving drug activity in South Dakota, providing ample reason for federal authorities to step in. The federal government may conduct such subsequent prosecutions because it is a different sovereign from the state. *United States v. Basile*, 109 F.3d 1304, 1306-07 (8th Cir. 1997), *cert. denied*,

522 U.S. 866 & 873 (1997). Mr. Larsen's conviction therefore did not violate the double jeopardy clause.

The *Petite* policy, an internal policy of the Department of Justice, states that a federal prosecution should not be based on substantially the same acts as were the basis for a prior state prosecution unless there is a compelling federal interest. *Thompson v. United States*, 448 U.S. 248, 248, 248-49 n.1 (1980) (per curiam) (citing *Petite v. United States*, 361 U.S. 529, 531 (1960) (per curiam)). The policy, however, confers no substantive rights on a criminal defendant, *see United States v. Leathers*, 354 F.3d 955, 962 & 962 n.5 (8th Cir. 2004), *cert. denied*, 125 U.S. 285 (2004), and thus Mr. Larsen could obtain no relief based on it even if the government had acted contrary to it here.

Mr. Larsen's assertion that a violation of the *Petite* policy combined with outrageous government conduct constituted a denial of due process must fail as well. Mr. Larsen moved to dismiss the indictment on grounds of outrageous government conduct, but the district court denied the motion after Mr. Larsen presented no evidence to support it. Since Mr. Larsen had the burden of proof on this matter, the district court quite obviously acted correctly.

Mr. Larsen also contends that the district court failed to instruct the jury properly. At trial, the court denied his request that the jury be instructed that it could draw an adverse inference from the destruction of field notes documenting the transaction between Detective Appel and Mr. Larsen if the destruction was intentional and in bad faith. In addition to challenging this ruling, Mr. Larsen maintains for the first time on appeal that the jury should have been similarly instructed with respect to the destruction of telephone recordings and other records that Minnesota state authorities had created. We review only for plain error the failure to give an instruction that was not requested at trial, *United States v. Thompson*, 403 F.3d 533, 536 (8th Cir. 2005). But here there was no error, plain or otherwise: Mr. Larsen was

not entitled to any of the instructions that he now maintains should have been given because the record does not support an inference that the police acted improperly by destroying any evidence. *See United States v. Iron Eyes*, 367 F.3d 781, 787 (8th Cir. 2004); *see also Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

Finally, Mr. Larsen argues that the district judge should have recused himself under 28 U.S.C. § 144 due to comments that that judge had made when Mr. Larsen appeared before him in 1995. *See also* 28 U.S.C. § 455. We review recusal decisions for an abuse of discretion, *United States v. Johnson*, 47 F.3d 272, 276 (8th Cir. 1995). Under *Liteky v. United States*, 510 U.S. 540, 555 (1994), "opinions formed by the judge on the basis of facts introduced or events occurring in the course of ... prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." The district judge's statements in the prior proceeding against Mr. Larsen dealt with the matter before the court at that time, and there was no evidence that the district judge would have been unable to adjudicate Mr. Larsen's current case fairly due to opinions that he formed and expressed ten years before. The denial of Mr. Larsen's recusal motion was therefore not an abuse of discretion. *See United States v. Sypolt*, 346 F.3d 838, 839-40 (8th Cir. 2003), *cert. denied*, 540 U.S. 1209 (2004). Because we have concluded that the relevant statute did not require the district judge to recuse himself, Mr. Larsen cannot prevail on his related contention that he was denied his due process right to an impartial judge, which claim must meet a more rigorous standard of proof. *See id.* at 840.

We affirm the judgment of the district court for the reasons given.

_____