

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-26-1999

# U.S. v. Hunte

Precedential or Non-Precedential:

Docket 97-1987

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"U.S. v. Hunte" (1999). *1999 Decisions.* Paper 239.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/239

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 26, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1987

UNITED STATES OF AMERICA

v.

EARL PACKER HUNTE,
a/k/a Earl Packer,
a/k/a E

Earl Packer Hunte,
        Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 96-cr-00539-9)
District Judge: Honorable Harvey Bartle, III

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 22, 1999

Before: BECKER, Chief Judge, COWEN, Circuit Judge,
and STAGG,* District Judge

(Filed: August 26, 1999)

_____

*Honorable Tom Stagg, U.S. District Judge for the Western District of
Louisiana, sitting by designation.

OPINION OF THE COURT

COWEN, Circuit Judge

Defendant Earl Packer Hunte was convicted by a jury in
the United States District Court of the Eastern District of
Pennsylvania of one count of conspiracy to distribute and
to possess cocaine with intent to distribute, in violation of
21 U.S.C. S 846. The government's evidence against Hunte,
the sufficiency of which he does not challenge on appeal,
established that he was a member of a violent, large-scale
narcotics trafficking organization led by Darryl Coleman
and Terrence Gibbs. See generally United States v. Gibbs,
Slip. Op. at ___ (filed concurrently herewith). Specifically,
the evidence demonstrated that Hunte agreed to distribute
cocaine supplied by Gibbs, and that he agreed to carry out
acts of violence to protect the illegal enterprise.

Hunte's appeal raises a single issue. He contends that
the government violated the so-called "anti-gratuity
statute," 18 U.S.C. S 201(c)(2), by making promises of
leniency to several cooperating witnesses in exchange for
their truthful testimony against him.1  Relying exclusively on
the Tenth Circuit's now vacated opinion in United States v.
Singleton, 144 F.3d 1343 (10th Cir. 1998) (Singleton I),
rev'd en banc, 165 F.3d 1297 (10th Cir.) (Singleton II), cert.
denied, 119 S. Ct. 2371 (1999), Hunte argues that the
District Court erred in not suppressing the testimony of
these cooperating witnesses.

Because Hunte did not raise this issue in the District
Court, we would ordinarily review it only for plain error. See
Fed. R. Crim. P. 52(b). Due to the frequency with which this
argument has been raised in the courts of this Circuit since

_____

1. Hunte has not provided us with the cooperating witnesses' plea
agreements. Based on the parties' description of those agreements, we
understand them to be of the usual sort. That is to say, the government
agreed to consider filing a motion under S 5K1.1 of the Sentencing
Guidelines in exchange for the witnesses' complete cooperation in the
investigation and prosecution of Hunte and others, including providing
testimony at trial. See Hunte Br. at 3; Gov. Br. at 2.

the issuance of Singleton I, however, we will take this opportunity to address the issue squarely. We hold that section 201(c)(2) does not prohibit the government from promising leniency to cooperating witnesses in exchange for truthful testimony. In so deciding, we align ourselves with the en banc decision of the Tenth Circuit, as well as every other circuit court that has considered the issue. See Singleton II, 165 F.3d at 1298; accord United States v. Stephenson, ___ F.3d ___, 1999 WL 437082, at *7 (2d Cir. June 30, 1999); United States v. Lara, #6D 6D6D# F.3d ___, 1999 WL 431140, at *9 (1st Cir. June 30, 1999); United States v. Condon, 170 F.3d 687, 688–89 (7th Cir. 1999); United States v. Johnson, 169 F.3d 1092, 1097 (8th Cir. 1999); United States v. Lowery, 166 F.3d 1119, 1122–24 (11th Cir. 1999); United States v. Ramsey, 165 F.3d 980, 987 (D.C. Cir. 1999); United States v. Ware, 161 F.3d 414, 418 (6th Cir. 1998), cert. denied, 119 S. Ct. 1348 (1999); United States v. Haese, 162 F.3d 359, 366–68 (5th Cir. 1998), cert. denied, ___ S. Ct. ___, 1999 WL 241837 (1999). Our reasons for rejecting the holding of Singleton I are set forth briefly below; given the numerous federal appellate decisions addressing this issue over the last year, an extended discussion would be redundant.

The criminal statute in question, 18 U.S.C. S 201(c)(2), provides in pertinent part:

> Whoever ... directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court ... authorized by the laws of the United States to hear evidence or take testimony ... shall be fined under this title or imprisoned for not more than two years, or both.

18 U.S.C. S 201(c)(2). The Tenth Circuit panel in Singleton I concluded, inter alia, that the plain meaning of the term "whoever" includes the government, and that, accordingly, a government attorney's promise of leniency to a witness in exchange for that witness' testimony violates S 201(c)(2). 144 F.3d at 1345–48. We disagree.

3

In Nardone v. United States, 302 U.S. 379 (1937), the Supreme Court described a canon of statutory construction that provides that a statute does not apply to the government or affect governmental rights unless the text of the statute expressly includes the government. Id. at 383; see also The Dollar Savings Bank v. United States, 86 U.S. (19 Wall) 227, 229 (1873) ("It is a familiar principle that the King is not bound by any act of Parliament unless he be named therein by special and particular words.") The Nardone Court stated that the canon has been applied in two categories of cases. "The first is where an act, if not so limited, would deprive the sovereign of a recognized or established prerogative title or interest." Id. at 383. The second category is "where a reading which would include such [government] officers would work obvious absurdity." Id. at 384. We agree with the courts that have held that this type of case -- where the government has agreed to move for leniency in exchange for testimony -- falls within both categories described in Nardone. See Ramsey, 165 F.3d at 988-90; Singleton II, 165 F.3d at 1300-01; Ware, 161 F.3d at 419.

First, construing section 201(c)(2) to preclude the government from offering leniency in exchange for truthful testimony would deprive the sovereign of an established and recognized prerogative. "The prosecutorial prerogative to recommend leniency in exchange for truthful testimony arises from English common law, see Ware, 161 F.3d at 419, and has been repeatedly approved by the United States Supreme Court . . .." Ramsey, 165 F.3d at 988 (citing The Whisky Cases, 99 U.S. 594 (1878)); see also United States v. Cervantes-Pacheco, 826 F.2d 310, 315 (5th Cir. 1987) ("No practice is more ingrained in our criminal justice system than the practice of the government calling a witness who is an accessory to the crime for which the defendant is charged and having that witness testify under a plea bargain that promises him a reduced sentence."). We are not persuaded by the Singleton I panel's claim that section 201(c)(2) is removed from this category because the statute only limits the practices of the government's agents, not the sovereign itself. 144 F.3d at 1345-46.2 If section

_____

2. In so concluding, the Singleton I court relied on the Supreme Court's statement in Nardone that "[t]he rule of exclusion of the sovereign is less

4

201(c)(2) did indeed prohibit promises of leniency in exchange for testimony, it is surely the government's interests that would be affected, not those of its representatives. See Ware, 161 F.3d at 421 ("When an assistant United States Attorney (AUSA) enters into a plea agreement with a defendant, that plea agreement is between the United States government and the defendant.").

Second, the application of section 201(c)(2) to the government in cases such as this would work an obvious absurdity. As many courts have observed, interpreting section 201(c)(2) to forbid promises of leniency in exchange for truthful testimony would "preclude enforcement or limit the efficacy of the terms of several more recent -- and more specific -- statutes [or Rules or Guidelines enacted purusant to statute], all of which presuppose the potential use of testimony in exchange for non-prosecution agreements, leniency recommendations, and/or other valuable promises." United States v. Lara, 1999 WL 431140, at *9 (1st Cir. June 30, 1999); see also Ramsey, 165 F.3d at 990; Singleton II, 165 F.3d at 1305-06. Numerous statutes adopted after the anti-gratuity law, for example, authorize sentence reductions for defendants who have provided "substantial assistance" in the investigation or prosecution of others. 28 U.S.C. S 994(n) (instructing the United States Sentencing Commission to ensure that Guidelines "take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense"); 18 U.S.C.S 3553(e) (authorizing court to impose a sentence below a statutory minimum upon motion of the government "to reflect a defendant's substantial assistance in the investigation or prosecution of another person"); U.S.S.G. S 5K1.1 (allowing government motion for a sentence reduction below the applicable sentencing range when a defendant provides substantial assistance); Fed. R. Crim. P. 35(b) (allowing government motion for a sentence reduction based on post-

_____

stringently applied where the operation of law is upon the agents or servants of the government rather than on the sovereign itself." Nardone, 302 U.S. at 383 (footnote omitted).

sentencing substantial assistance). It is plain to us that the "substantial assistance" referred to in these statutes includes providing testimony against others. See U.S.S.G. S 5K1.1(a)(2) (in deciding the extent of a"substantial assistance" sentencing departure, court may consider "the truthfulness, completeness, and reliability of any information or testimony provided by the defendant") (emphasis added). Accordingly, adopting the holding of Singleton I would create an "absurd conflict," Ramsey, 165 F.3d at 990, between section 201(c)(2) and the above-cited statutes.3

Finally, we reject the holding of Singleton I because it is completely implausible to us that Congress, in enacting section 201(c)(2), intended to sub silentio overrule the government's long-standing practice of entering into leniency-for-testimony agreements. Ramsey, 165 F.3d at 991. As the en banc Tenth Circuit explained, "we must presume if Congress had intended that section 201(c)(2) overturn this aspect of American legal culture, it would have done so in clear, unmistakable, and unarguable language." Singleton II, 165 F.3d at 1301; cf. Green v. Bock Laundry Machine Co., 490 U.S. 504, 521 (1989) ("A party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change."). There is nothing in the statute that even approaches the type of clear statement that we would expect if Congress had intended the result reached by the Singleton I panel. Nor is there any statement in the relevant legislative history which would support such a conclusion. Ramsey, 165 F.3d at 991.

For the foregoing reasons, the District Court did not commit any error -- plain or otherwise -- in admitting the testimony of the cooperating witnesses against Hunte.4 Accordingly, Hunte's conviction will be affirmed.

_____

3. Other courts have also observed that the Singleton I panel's holding would create a conflict with the Witness Relocation and Protection Act, 18 U.S.C. S 3521 and the federal immunity statutes, 18 U.S.C. SS 6001-05. See, e.g., Ramsey, 165 F.3d at 990.

4. We note that this case presents only the question of whether section 201(c)(2) prohibits the government from making promises of leniency in exchange for testimony. It does not present the situation, for example, in which a witness has received money from the government, arguably in exchange for testimony. See, e.g., United States v. Medina, 41 F. Supp. 2d 38 (D. Mass. 1999). We have no occasion here to consider the applicability, if any, of section 201(c)(2) in such a case.

6

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

7