**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Raymond CHILDRESS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 28, 2002.

Filed May 16, 2002.

---

John L. Elash, Pittsburgh, for appellant.

Michael W. Streily, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before FORD ELLIOTT, BOWES and POPOVICH, JJ.

BOWES, J.

¶ 1 Raymond Childress appeals from the December 18, 2000 order denying him post-conviction relief. Appellant contends that prior counsel rendered ineffective assistance by failing to pursue: 1) the suppression of the Commonwealth witnesses' testimony on grounds that the Commonwealth obtained that testimony in violation of 18 Pa.C.S. § 4952(a)(2), Pa. Rule Professional Conduct 3.4(b), and 18 U.S.C. § 201(c)(2); and 2) the dismissal of these charges on the basis that Appellant was selectively prosecuted. We find that prior counsel's representation was not deficient, and we affirm.

¶ 2 On December 28, 1992, Appellant was arrested and charged with criminal conspiracy and a firearms violation, as well as four counts of aggravated assault. At a jury trial, he was acquitted of the firearms charge but convicted of all remaining charges. On direct appeal, we recited the factual foundation for these convictions:

Beginning in 1987, Appellant's co-defendant, William "Ricky" Boyd, was the leader of a narcotics trafficking organization which included Childress, Kelly Bell and Will Smith among his inner circle. Members of the organization possessed firearms and used violence to further the aims of their narcotics business. In early 1990, Boyd's organization had a conflict with a rival organization headed by Eric "E-man" Jefferies. Other members of the Jefferies gang included Tom Easley, Ron Ashby, Terrell Bush and George Hilliard.

In the spring of 1990, Boyd learned that Eric "E-man" Jefferies had been purchasing cocaine from individuals other than him. In order to teach Jefferies a lesson for this "disloyalty," Boyd and Bell "ripped off" Jefferies for a large amount of cocaine. This episode prompted a full fledged turf war between the Boyd and Jefferies organizations.

In the early morning hours of December 29, 1990, Ron Ashby, a member of the Jefferies organization, shot William Boyd in the back outside of the Hollywood Club in Homewood. From this point forward, Bell, Childress and Will Smith began actively seeking members of the Jefferies organization to retaliate for the shooting of Boyd. As a part of this effort, Bell enlisted the help of his jailhouse friend, Kevin Williams.

On December 30, 1990, Bell, Childress, Williams and Smith went to the apartment of George Hilliard, another member of the Jefferies organization. Bell fired several shots through Hilliard's door, but no one was injured. Immediately thereafter, Bell, Childress, Williams and Smith went to visit Boyd in the hospital. Boyd was informed about the shooting that day. Boyd instructed the foursome to "keep taking care of business," i.e., to continue to seek out and shoot anyone from the Jefferies organization. William Boyd was released from the hospital on January 4, 1991.

During the evening of January 8, 1991, Boyd and Childress went to the home of Kevin Williams and picked him up. There, in private before they left, Boyd offered Williams $5000 to kill Eric Jefferies and his associates. Boyd and Childress then took Williams into the car and drove around Lawrenceville, East Hills and Penn Hills pointing out to Williams the different homes and apartment buildings in which Jefferies and his associates lived.

On January 11, 1991, Boyd and Williams staked out the residence of Jefferies in Penn Hills.... While Boyd was taking his turn as the "lookout," Tom Easley, in his car, entered the driveway and parked. Boyd opened fire on Easley, hitting him several times. Boyd and Williams then drove away.

On January 22, 1991, Boyd and Williams returned to the Hilliard residence. After staking out the apartment for several hours, they saw several individuals getting into a car that they recognized as being Hilliard's. Williams and Boyd both shot at the vehicle, shooting three men and a child.

*Commonwealth v. Childress,* 452 Pa.Super. 37, 680 A.2d 1184, 1185–86 (1996).

¶ 3 Following imposition of judgment of sentence, Appellant appealed to this Court, and on June 26, 1996, we rejected Appellant's six allegations of error and affirmed his judgment of sentence. *Id.* On January 15, 1997, our Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Childress,* 547 Pa. 723, 689 A.2d 231 (1997).

¶ 4 On March 18, 1998, within one year of when his judgment of sentence became final, Appellant filed a timely PCRA petition.[1] This appeal followed denial of that petition. On appeal, Appellant contends prior counsel was ineffective for failing: 1) to seek "the suppression" of the testimony of two of the Commonwealth witnesses; and 2) to raise allegations that the Commonwealth engaged in selective prosecution by dropping charges against the "more culpable" individuals and singling out Appellant for prosecution based on unspecified "arbitrary reasons." Appellant's brief at i.

¶ 5 Both of these contentions concern the Commonwealth's offer of leniency to Kelly Bell and Kevin Williams, cohorts in Appellant's drug organization, in exchange for their testimony against Appellant. First, Appellant suggests that their testimony was obtained in violation of 18 Pa. C.S. § 4952(a)(2), 18 U.C.S. § 201(c)(2), and Rule 3.4(b) of the Rules of Professional Conduct. A subsidiary contention is that when testifying, Bell and Williams violated 18 Pa.C.S. § 4909.

¶ 6 In order to prevail on a claim that counsel was ineffective, the defendant has the burden of establishing that the underlying claim has arguable merit, counsel's action or inaction was not grounded in reasonable strategy designed to effectuate the defendant's interest, and there is a reasonable probability that the act or

---

1. Under 42 Pa.C.S. § 9545(b)(1), all petitions for PCRA relief must be filed within one year of when a defendant's judgment of sentence becomes final. Appellant's judgment of sentence became final on April 12, 1997, ninety days after our Supreme Court denied review. *See Commonwealth v. Padden,* 783 A.2d 299 (Pa.Super.2001) (when determining the timeliness of a PCRA petition, we must take into consideration the ninety day period during which the petitioner may file a petition for certiorari with the United States Supreme Court); 42 Pa.C.S. § 9545(b)(3) (for purposes of the PCRA, a judgment of sentence becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review).

omission prejudiced the defendant in such a way that the outcome of the proceeding would have been different. *Commonwealth v. Lawson*, 762 A.2d 753 (Pa.Super.2000).

¶ 7 Appellant first contends that counsel should have moved to suppress the testimony of Bell and Williams because when presenting their testimony, the Commonwealth violated 18 Pa.C.S. § 4952(a)(2), which provides:

(a) **Offense defined.**—A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

. . . .

(2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.

Appellant also posits that the prosecutor violated Pa. Rule Professional Conduct 3.4(b), which provides in relevant part: "A lawyer shall not . . . falsify evidence, counsel, or assist a witness to testify falsely. . . ."

¶ 8 One fatal flaw in Appellant's position is that there is not a scintilla of evidence that Bell or Williams testified falsely or gave misleading evidence. Similarly, there is no indication that the prosecutor believed that the witnesses gave false testimony or wanted them to testify falsely. Thus, there is no arguable merit to Appellant's assertion that the Commonwealth violated 18 Pa.C.S. § 4952(a)(2) or Rule 3.4(b). In the absence of arguable merit to these claims, Appellant cannot prevail in his contention that counsel was ineffective with regard to these issues.

¶ 9 Since there is no evidence that the Commonwealth violated section 4952(a)(2), Bell and Williams could not have violated 18 Pa.C.S. § 4909 ("A person commits a felony of the third degree if he solicits, accepts or agrees to accept any benefit in consideration of his doing any of things specified in section 4952(a)(1) through (6) (relating to intimidation of witnesses or victims).").

¶ 10 Appellant's contention of ineffective assistance of counsel also rests upon the argument that the Commonwealth violated 18 U.S.C. § 201(c)(2), which sanctions anyone who "directly or indirectly gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial . . . before any court. . . ." Appellant asserts that prior counsel should have raised this argument and failed to do so.

¶ 11 While the courts of this Commonwealth have not previously addressed the issue of leniency in exchange for testimony, the federal courts have done so repeatedly. Each court of appeals uniformly has ruled that the government does *not* violate 18 U.S.C. § 201(c)(2) by offering leniency to one individual in exchange for his testimony against another person.[2] *United States v. Richardson*, 195 F.3d 192, 197 (4th Cir.1999) ("In construing

---

**2.** A panel of the Tenth Circuit initially ruled that the government did violate 18 U.S.C. § 201(c)(2) by offering leniency to a witness in exchange for his testimony, *United States v. Singleton*, 144 F.3d 1343 (10th Cir.1998), but that decision was overruled by the court *en banc*. *United States v. Singleton*, 165 F.3d 1297 (10th Cir.1999). *Singleton I*, upon which Appellant relies, has been termed a misguided aberration. *United States v. Lara*, 181 F.3d 183 (1st Cir.1999).

§ 201(c)(2) as we do, we join the unanimous conclusion of circuit courts that have ruled over the past year that the government does not violate § 201(c)(2) by granting immunity or leniency or entering into plea agreements to obtain testimony."); *United States v. Hunte,* 193 F.3d 173 (3d Cir.1999); *United States v. Flores,* 172 F.3d 695 (9th Cir.1999); *United States v. Condon,* 170 F.3d 687 (7th Cir.1999); *United States v. Johnson,* 169 F.3d 1092 (8th Cir.1999); *United States v. Lowery,* 166 F.3d 1119 (11th Cir.1999); *United States v. Singleton,* 165 F.3d 1297 (10th Cir.1999); *United States v. Webster,* 162 F.3d 308 (5th Cir.1998); *United States v. Stephenson,* 183 F.3d 110 (2nd Cir.1999); *United States v. Lara,* 181 F.3d 183 (1st Cir.1999); *United States v. Ramsey,* 165 F.3d 980 (D.C.Cir.1999); *United States v. Ware,* 161 F.3d 414 (6th Cir.1998); *United States v. Haese,* 162 F.3d 359 (5th Cir. 1998).

¶ 12 All twelve federal courts of appeals have concluded that: 1) 18 U.S.C. § 201(c)(2) does not apply to the government for various reasons, including that it would not apply to the government absent an express indication that it was to apply, *see Nardone v. United States,* 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937) (a statute does not apply to or affect the government or its rights unless the text expressly states that its provisions apply to the government); and 2) application of 18 U.S.C. § 201(c)(2) to the government would conflict with and erase other powers granted to the government in pursuit of prosecutions.

¶ 13 Additionally, federal courts have refused to apply 18 U.S.C. § 201(c)(2) to the government on the basis that it would be absurd to construe that statute to deprive the government of an established and sanctioned "prerogative to recommend leniency in exchange for truthful testimony,

[which] arises from English common law." *Hunte, supra* at 175. The process of plea-bargaining is an approved procedure both in this Commonwealth and in the federal system. *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *Commonwealth v. Smith,* 444 Pa.Super. 652, 664 A.2d 622 (1995). Furthermore, a defendant "has no right to a deal with the Commonwealth; the district attorney is ordinarily free to choose with whom he will negotiate." *Commonwealth v. Losch,* 369 Pa.Super. 192, 535 A.2d 115, 125 (1987).

¶ 14 The approval of plea-bargaining extends to its use in the precise circumstances at issue in this case. In *United States v. Singleton,* 165 F.3d 1297, 1301 (10th Cir.1999), the Court examined the practice:

From the common law, we have drawn a longstanding practice sanctioning the testimony of accomplices against their confederates in exchange for leniency. *See Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *Lisenba v. California,* 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941); *Benson v. United States,* 146 U.S. 325, 13 S.Ct. 60, 36 L.Ed. 991 (1892); *The Whiskey Cases,* 99 U.S. 594, 25 L.Ed. 399 (1878). Indeed,

no practice is more ingrained in our criminal justice system than the practice of the government calling a witness who is an accessory to the crime for which the defendant is charged and having that witness testify under a plea bargain that promises him a reduced sentence.

*United States v. Cervantes–Pacheco* 826 F.2d 310, 315 (5th Cir.1987); *United States v. Juncal,* 1998 U.S.Dist. LEXIS 13036, 1998 WL 525800, at * 1 (S.D.N.Y. Aug.20, 1998) ("The concept of affording cooperating accomplices with leniency dates back to the common law in Eng-

land and has been recognized and approved by the United States Congress, the United States Courts and the United States Sentencing Commission.").

This ingrained practice of granting lenience in exchange for testimony has created a vested sovereign prerogative in the government. It follows that if the practice can be traced to the common law, it has acquired stature akin to the special privilege of kings.

¶ 15 In approving this practice, the United States Supreme Court has noted that credibility determinations are within the jury's province, that any benefit obtained by a witness in exchange for his testimony can be revealed through cross-examination, and that the benefit then becomes a consideration weighed by the jury when resolving its credibility determination. *Hoffa v. United States, supra.*

¶ 16 We have no desire to abrogate a centuries-old prosecutorial tool that enables the Commonwealth to obtain convictions it would not otherwise obtain by offering leniency to individuals who are guilty of criminal conduct. Hence, we join the federal courts of this nation in their view that 18 U.S.C. § 201(c)(2) does not bar the government from offering leniency to one person in exchange for his testimony against another. We therefore reject Appellant's argument that suppression of these witnesses' testimony was warranted under the law, and we conclude prior counsel was not ineffective for failing to pursue this claim.

 ¶ 17 Next, Appellant levels a claim of selective prosecution. The law in this area is well-pronounced:

> In order to establish a *prima facie* case of selective prosecution, Appellant must establish, first, that others similarly situated were not prosecuted for similar conduct, and, second, that the Commonwealth's discriminatory prosecutorial selection was based on impermissible grounds such as race, religion, the exercise of some constitutional right, or any other such arbitrary classification.

*Commonwealth v. Murphy,* 795 A.2d 997, 2002 PA Super 83, 84; *see also Commonwealth v. Rickabaugh,* 706 A.2d 826 (Pa.Super.1997).

¶ 18 In this case, Appellant has not offered any basis for us to conclude that his prosecution was founded upon an impermissible factor, which is required in order for a defendant to establish a case of selective prosecution. *Commonwealth v. Mulholland,* 549 Pa. 634, 702 A.2d 1027 (1997). Appellant's purported minimal culpability is not relevant. Appellant must establish that he was prosecuted for an incorrect reason, not that the Commonwealth failed to prosecute another guilty person. Furthermore, the Commonwealth did have a valid reason for not prosecuting Bell and Williams: they had agreed to testify against Appellant and Boyd, who was the head of the drug organization. Since there was no valid claim of selective prosecution, counsel was not ineffective for failing to raise it.

¶ 19 Order affirmed.

¶ 20 Judge POPOVICH Concurs in the Result.