J-A21036-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| HASSIEN SISTRUNK, | : | |
| | : | |
| Appellant | : | No. 2816 EDA 2015 |

Appeal from the Judgment of Sentence April 24, 2015
in the Court of Common Pleas of Montgomery County,
Criminal Division, No(s): CP-46-CR-0011738-2011

BEFORE: BENDER, P.J.E., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED OCTOBER 24, 2016**

Hassein Sistrunk ("Sistrunk") appeals from the judgment of sentence imposed after a jury convicted him of two counts each of burglary and conspiracy to commit burglary, and one count of criminal trespass.[1] We affirm in part, and vacate in part.

The trial court concisely set forth the relevant factual and procedural history underlying this appeal, which we adopt as though fully set forth herein. *See* Trial Court Opinion, 11/24/16, at 1-4.

As an addendum, we observe the following. Notably, the jury acquitted Sistrunk of some of the charges against him, including theft by unlawful taking or disposition, and receiving stolen property (hereinafter collectively referred to as "the theft-related offenses"). Additionally, Sistrunk's co-defendant, Michael Cannon ("Cannon"), entered an open guilty

---

[1] 18 Pa.C.S.A. §§ 3502(a), 903(a)(1), 3503(a)(1)(ii).

plea to the charges against him arising out of the burglaries. However, Cannon failed to appear at his sentencing hearing, and a bench warrant was issued for his arrest. Cannon remains at large. Finally, the amount of restitution that the trial court ordered Sistrunk to pay, $27,685.53 (jointly and severally with Cannon), represented the value of the victims' personal property that was stolen from their residences. At sentencing, the victims testified as to their losses, and submitted victim impact testimony and letters.

In this timely appeal, Sistrunk presents the following issues for our review:

I. Whether the judgment of sentence must be vacated and [Sistrunk] discharged because the trial court erred as a matter of law and abused its discretion in failing to set aside the jury's guilty verdicts for burglary and conspiracy to commit burglary, when the trial record is void of any factual findings of what crime was committed inside the residences, or intended to be committed inside, and the jury expressly found that no theft[-]related crimes were committed[?]

II. Whether the trial court abused its discretion and erred as a matter of law when it denied [Sistrunk's] **Batson**[2] challenge at the time of jury selection[?]

III. Whether the judgment of sentence must be vacated and [Sistrunk] discharged because the record indicates, when compared to [Sistrunk's] co-defendant, that [Sistrunk] was selectively prosecuted due to his decision to [i]nvoke his constitutional right to a jury trial, in violation of his state and federal constitutional rights, as evidenced by the disparaging treatment at the sentencings[?]

---

[2] **Batson v. Kentucky**, 476 U.S. 79 (1986).

IV. Whether the trial court abused its discretion when it considered victim impact testimony at the time of sentencing regarding losses from thefts and persons being present during a burglary, when the jury found that there were no losses from thefts and no persons were present at the time of the burglaries[?]

V. Whether the trial court erred as a matter of law in ordering restitution for allegedly stolen items when there is no causal connection between the jury verdict and the alleged losses sustained by the victims, as the jury made specific findings that there were no such losses[?]

Brief for Appellant at 4 (issues renumbered for ease of disposition; footnote added; capitalization omitted).

Sistrunk first argues that the trial court erred by failing to set aside his convictions for burglary and conspiracy to commit burglary,[3] where the jury had acquitted him of the theft-related offenses. *See id.* at 14-17. Sistrunk asserts that

due to the Commonwealth's request for restitution for the stolen items from the [burglarized] household[s], the Commonwealth implicitly specified the crime alleged to have occurred during the burglar[ies] – the theft of the items. Further, due to the trial court's determination that restitution was warranted in this matter to cover the costs of the items stolen during the burglar[ies], the court made a judicial determination that a theft[-]related charge did occur inside the households. However, because the jury expressly determined that [] Sistrunk committed no crimes that would be related to the theft of personal items, the trial court committed an error [of] law by making such a determination and, based upon this determination, must set aside the convictions for burglary and conspiracy to commit burglary.

---

[3] Sistrunk does not challenge his conviction of criminal trespass.

*Id.* at 14; *see also id.* at 15 (citing ***Commonwealth v. Brown***, 886 A.2d 256, 260 (Pa. Super. 2005) (stating that "[w]hen the Commonwealth does specify, in the information or indictment, the crime defendant intended to commit, the Commonwealth must prove the requisite intent for that particular crime in order to prove a burglary or attempted burglary.")).[4]

In its Opinion, the trial court set forth the relevant law, addressed Sistrunk's claims, and properly determined that his challenge to his convictions lacks merit. **See** Trial Court Opinion, 11/24/16, at 5-8. We affirm with regard to this issue based on the trial court's sound rationale. **See id.**

In his second issue, Sistrunk contends that the trial court erred by denying his **Batson** challenge, where the Commonwealth discriminated against him by using its peremptory challenges to remove two African American (Sistrunk's race) potential jurors during *voir dire*. **See** Brief for Appellant at 23-30. Sistrunk argues that

> in the jury panel of forty[-]five [] potential jurors, there were only three [] African American potential jurors. [After one of these jurors was stricken for cause,] … [t]he Commonwealth used its p[er]emptory strikes to strike the remaining two African American prospective jurors, identified in the record as Juror Number 12 and Juror Number 18 [(collectively "the stricken venirepersons")]. Accordingly, the prosecutor was required to provide adequate, neutral, legitimate, and reasonably specific explanations for striking [the stricken venirepersons]. However, the explanations provided were not adequate, [race-]neutral,

---

[4] Sistrunk concedes that, here, the Commonwealth did not specify, in the information or indictment, the crime(s) that he intended to commit inside of the victims' residences. Brief for Appellant at 15.

legitimate, and reasonably specific, but rather[,] based upon the prosecutor's "feelings" and "lack of confidence" in [the stricken venirepersons].

*Id.* at 24 (internal citation to record omitted) (citing **Batson**, 476 U.S. at 94 (stating that where an appellant "has made a *prima facie* showing of purposeful discrimination, the burden shifts to the prosecution to come forward with a clear and reasonably specific [race-]neutral explanation for challenging such jurors")).

In its Opinion, the trial court set forth the applicable law, summarized the relevant portions of the *voir dire* transcript containing the prosecutor's reasons for striking the stricken venirepersons, and opined that the court properly denied Sistrunk's **Batson** challenge, as the prosecutor gave sufficient, race-neutral reasons for the challenges. **See** Trial Court Opinion, 11/24/16, at 9-14. We affirm with regard to this issue based on the trial court's reasoning. **See id.**; **see also Commonwealth v. Sanchez**, 36 A.3d 24, 45 (Pa. 2011) (rejecting the defendant's **Batson** challenge and stating that "[w]here, as here, there is little evidence bearing on the issue of the prosecutor's discriminatory intent, and the best evidence is the demeanor of the attorney who exercises the challenge, the trial court's determination will turn on the court's assessment of the prosecutor's credibility[,]" which an appellate court will ordinarily not disturb).

In his third issue, Sistrunk contends that his judgment of sentence must be vacated because the Commonwealth "selectively prosecuted" him

(when compared to his co-defendant, Cannon, who entered an open guilty plea), due to Sistrunk's decision to exercise his constitutional right to a jury trial. *See* Brief for Appellant at 30-34; *see also id.* at 32 (asserting that "Cannon, although similarly situated, was not prosecuted for his similar conduct.").

"In order to establish a *prima facie* case of selective prosecution, [an a]ppellant must establish, first, that others similarly situated were not prosecuted for similar conduct, and, second, that the Commonwealth's discriminatory prosecutorial selection was based on impermissible grounds such as race, religion, the exercise of some constitutional right, or any other such arbitrary classification." *Commonwealth v. Childress*, 799 A.2d 805, 811 (Pa. Super. 2002) (citation omitted). In the instant case, Sistrunk failed to meet the first prong of the above test, as the Commonwealth, in fact, prosecuted Cannon.

Sistrunk's claim is more properly viewed as alleging vindictive prosecution. "The defense of prosecutorial vindictiveness is based upon the theory that due process prohibits a prosecutor from punishing a criminal defendant in retaliation for that defendant's decision to exercise a constitutional right." *Commonwealth v. Butler*, 601 A.2d 268, 270 (Pa. 1991); *see also Commonwealth v. Smith*, 664 A.2d 622, 628-29 (Pa. Super. 1995) (stating that prosecutorial vindictiveness exists "where the accused is treated more harshly because he successfully exercised a lawful

right, *e.g.*, the right to seek a new trial." (citation and brackets omitted)). A claim of prosecutorial vindictiveness is a question of law and not of fact, and is unrelated to the question of guilt or innocence. **Butler**, 601 A.2d at 270; **see also Commonwealth v. Raban**, 85 A.3d 467, 468 (Pa. 2014) (stating that where an issue implicates a question of law, our standard of review is *de novo* and our scope of review is plenary).

Sistrunk argues that the vindictiveness of the prosecution against him is evident when compared with the disparate treatment that Cannon received after he entered a guilty plea, despite being similarly-situated. **See** Brief for Appellant at 32-34. Sistrunk avers that, at his sentencing, the Commonwealth (1) improperly presented victim impact statements that referenced only Sistrunk, not Cannon; (2) "disagree[d] with the trial court that the two co-defendants should be given the same consideration for their same crimes"; and (3) "request[ed] [] the trial court … [to] sentence [Sistrunk] in a harsher manner than Cannon." **Id.** at 33, 34.[5]

---

[5] Sistrunk additionally alleges that the prosecutorial vindictiveness is evident because the Commonwealth allegedly agreed for Cannon to be released on bail following his guilty plea, whereas it asked the trial court to revoke Sistrunk's bail after he was convicted of the same offenses. Brief for Appellant at 33-34. Sistrunk, however, has waived this claim by failing to raise it before the trial court. **See** Pa.R.A.P. 302(a) (stating that an issue cannot be raised for the first time on appeal); **see also Commonwealth v. Rosser**, 135 A.3d 1077, 1086 (Pa. Super. 2016) (stating that "[w]here the trial court denies relief on one theory, a defendant may not attain appellate relief on a new theory for that same relief."). Nevertheless, even if this claim was properly preserved, we determine that it would not entitle Sistrunk to relief.

Sistrunk offers nothing in support of his bald allegation that the prosecution's actions toward him were the result of his having exercised his right to a jury trial, nor does our review of the record reveal any support for such claim. Indeed, a review of the sentencing transcript reveals no indication that the prosecutor made statements evidencing vindictiveness toward Sistrunk. Moreover, to the extent that Sistrunk claims that the prosecution announced an intent to seek a harsher sentence for Sistrunk than Cannon, this claim is speculative and unavailing. Even assuming, *arguendo*, that Cannon was similarly situated to Sistrunk, Cannon absconded and has not been sentenced. Finally, to the extent that Sistrunk points out that the victim impact statements presented at *his* sentencing referenced only him and not Cannon, this claim is unavailing and nonsensical.

In his fourth issue, Sistrunk asserts that the sentencing court abused its discretion when it considered victim impact testimony concerning the victims' losses from the thefts, prior to sentencing Sistrunk. **See** Brief for Appellant at 35-37. Specifically, Sistrunk contends that because the jury acquitted him on the theft-related charges, the sentencing court improperly considered victim impact testimony concerning those losses, as it was irrelevant and "contradict[ed] the jury's verdict." **Id.** at 37.

Sistrunk's claim implicates the discretionary aspects of his sentence, from which there is no absolute right to appeal. **Commonwealth v. Hill**, 66 A.3d 359, 363 (Pa. Super. 2013); **see also Commonwealth v.**

*McNabb*, 819 A.2d 54, 57 (Pa. Super. 2003) (stating that a claim that a sentencing court relied on impermissible factors constitutes a challenge to the discretionary aspects of sentencing). Before this Court may address the merits of a discretionary sentencing claim, the appellant must have set forth in his or her brief a concise statement of the reasons relied upon for allowance of appeal pursuant to Pennsylvania Rule of Appellate Procedure 2119(f). *See Commonwealth v. Robinson*, 931 A.2d 15, 19 (Pa. Super. 2007) (*en banc*). If, however, an appellant fails to include a Rule 2119(f) statement in the brief, and the Commonwealth objects to this failure, then the appellant's discretionary sentencing claim is waived and this Court may not review it. *Id.*

Here, the Commonwealth objected to Sistrunk's failure to include the requisite Rule 2119(f) statement in his brief. *See* Commonwealth's Brief at 31-32. Accordingly, we deem Sistrunk's discretionary sentencing claim waived on this basis. *See Robinson*, 931 A.2d at 22 (finding waiver of the appellant's discretionary sentencing claim because he had failed to include the claim in his Rule 2119(f) statement and the Commonwealth objected to this failure).[6]

Finally, Sistrunk argues that the sentencing court imposed an illegal sentence when it ordered him to pay restitution to the victims for the items

---

[6] Even if we did not find waiver of Sistrunk's claim, we would determine that it lacks merit based upon the reasoning advanced by the trial court in its Opinion. *See* Trial Court Opinion, 11/24/16, at 15-16.

stolen from their homes during the burglaries, where the jury had acquitted him of the theft-related offenses. *See* Brief for Appellant at 17-22.

> In the context of criminal proceedings, an order of restitution is not simply an award of damages, but, rather, a sentence. An appeal from an order of restitution[,] based upon a claim that a restitution order is unsupported by the record [or the law,] challenges the legality, rather than the discretionary aspects, of sentencing. The determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary.

*Commonwealth v. Stradley*, 50 A.3d 769, 771-72 (Pa. Super. 2012) (citations and quotation marks omitted); *see also Commonwealth v. Atanasio*, 997 A.2d 1181, 1183 (Pa. Super. 2010). An illegal sentence of restitution must be vacated. *Commonwealth v. Gentry*, 101 A.3d 813, 817 (Pa. Super. 2014).

A sentence of restitution must be based upon statutory authority. *Commonwealth v. Barger*, 956 A.2d 458, 464 (Pa. Super. 2008) (*en banc*). Section 1106 of the Crimes Code provides, in relevant part, that a sentence of restitution may be imposed "[u]pon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime …." 18 Pa.C.S.A. § 1106(a). Importantly, a defendant may only be held accountable for restitution as to the "losses flowing from the conduct for which the defendant has been held criminally accountable." *Commonwealth v. Cooper*, 466 A.2d 195, 197 (Pa. Super. 1983); *see*

*also Commonwealth v. Harner*, 617 A.2d 702, 706 (Pa. 1992) (stating that section 1106 "is clear on its face and applies only for those crimes to property or person where there has been a loss that flows from the conduct which forms the basis of the crime for which a defendant is held criminally accountable."); *Commonwealth v. Balisteri*, 478 A.2d 5, 9 (Pa. Super. 1984) (stating that "[t]o order a defendant to pay restitution, his or her criminal conduct must have caused the loss or injury being compensated for.").

Sistrunk argues that the restitution order is unlawful and cannot stand because

> there is no "causal connection" between the burglary charges [of which Sistrunk was convicted] and the restitution order due to the jury's express finding that [Sistrunk] was not guilty of the theft[-related offenses]. Further, it cannot be assumed or speculated by the trial court that the jury determined that the crime underlying the burglary was related to the missing items. … [T]he jury clearly found that [Sistrunk] was not guilty of all theft[-related] … offenses, and there is no additional evidence or information on the record that would indicate that the burglaries directly resulted in the theft of such items.

Brief for Appellant at 19 (some quotation marks omitted). We agree. Because the jury did not hold Sistrunk criminally accountable for the theft of any items from the victims' homes, the trial court imposed an illegal sentence when it ordered Sistrunk to pay restitution for the victims' losses incurred from the thefts. *See*, *e.g.*, *Barger*, 956 A.2d at 465 (vacating the trial court's order that required the defendant to pay restitution for the value of the victim's couch that was allegedly lost, where "there was no direct

nexus between the crime for which [the defendant] was convicted and the loss of the couch, as Section 1106 requires."); *see also Cooper*, 466 A.2d at 197 (vacating the trial court's order that required the defendant to pay restitution for the costs connected with a victim's death incurred by the victim's family because the defendant only pled guilty to leaving the scene of the accident and was not found criminally responsible for having struck the victim).

Accordingly, we affirm the judgment of sentence of incarceration imposed on Sistrunk's convictions. However, we vacate the judgment of sentence insofar as it ordered Sistrunk to pay restitution.

Judgment of sentence imposing restitution vacated. Judgment of sentence in all other respects affirmed. Superior Court jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/24/2016

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
PENNSYLVANIA
CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA   :      No. 1738-11

               v.              :

HASSIEN SISTRUNK                :

**O P I N I O N**

**O'NEILL, J.**                                         **November 23, 2015**

Defendant, Hassien Sistrunk, appeals from the Order entered on August 28, 2015, denying his Post Sentence Motion. For the reasons set forth below, the judgement of sentence should be affirmed.

### I.     Facts and Procedural History

On May 26, 2010, the home at 680 Rittenhouse Place, Franconia Township, Montgomery County, Pennsylvania was burglarized. Notes of Testimony (N.T.), Pretrial Motions/Trial by Jury, Jul. 8, 2014 at 85. While police were at the scene, a call came in for a burglary in progress nearby at 380 Indian Creek Road. Id. at 85, 87. The following items, valued at over $20,000, were missing from the Thompson home on Rittenhouse Place: two gaming system and games, a computer screen, Mrs. Thompson's jewelry, her deceased mother's jewelry, her husband's antique watch collection and some of his jewelry as well as duffle bags to carry the items. Id. at 98-99, 101.

The home on Indian Creek Road was entered through a window; the screen was slit and popped out of the window. Id. at 110. The following items,

valued at over $10,000, were missing from the Brinton home on Indian Creek Road: jewelry, a Nintendo, iPads, watches, a ring, a piggy bank and miscellaneous cash. Id. at 113. There was a case of water outside of this home from which the Defendant and the others took bottles and drank. N.T., Jul. 9, 2014 at 153.

Just before the burglaries, a public works employee, Joshua Worman, was cutting the grass in a park nearby, when he saw a silver car pull in to the parking lot. N.T., Jul. 8, 2014 at 125. Three men, two African Americans and one Caucasian, got out of the car and walked up a path and out of his view. Id. at 125-127. Ten to fifteen minutes later, they returned to their car. Id. at 155. Worman observed the three men in the vicinity of the crimes looking into windows and walking around the neighborhood. Id. at 127-132, 156-157.

The men left in the car, but returned an hour to hour and a half later, at which time the exited the vehicle and appeared to throw something in the trash. Id. at 129, 158-60. Police later recovered a black latex glove from the trashcan. Id. at 202. The men then crossed the field Worman was mowing and walked very close to him. Id. at 131, 160. They continued into another development, out of his sight. Id. at 131. Worman became suspicious, so he took a picture of the car's license plate, which would later be identified as belonging to Rochelle Brown, from whom the Defendant rented a room. Id. at 132; N.T., Jul. 8, 2014 at 214-215. A short time later, he saw the three men running across the same field, one of the individuals now had a white bag in his hand. N.T. Jul. 8, 2014 at 135. The men got into the silver car and left

2

the area. Id. at 135. Mr. Worman was later able to identify the Defendant as one of them men he saw that day. Id. at 140-144,147.

Other witnesses reported seeing two black males and a white male running from the scene. N.T., Jul. 9, 2014 at 79. After the burglaries, the men disposed of the water bottles and gloves. Id. at 156. Some were thrown away in the park trashcan, some were thrown out front of the second house and some were tucked in the bushes. Id. Several black latex gloves and water bottles were found in the area of the crimes. The Defendant could not be excluded as a contributor of the DNA on one of the water bottles, and one of the gloves contained a mixture of DNA that was probably the Defendant and an unknown contributor. N.T., Jul. 10, 2014 at 37, 39. Likewise, the Defendant's cell phone records placed his phone in the area of the crimes. See, N.T., Jul. 9, 2014 at 258-261.

After several months of investigation, on or about February 9, 2011, the Defendant was arrested and charged with Burglary[1], Conspiracy to Commit Burglary[2], Criminal Trespass[3], Theft by Unlawful Taking[4], Receiving Stolen Property[5], Criminal Mischief[6], and Recklessly Endangering Another Person[7]. Following statements of the Defendant, Co-Defendant Michael Cannon was later arrested. The third man, Derrick Smith, was not charged.

---

[1] 18 Pa.C.S.A. §3502(a).
[2] 18 Pa.C.S.A. §903(a)(1).
[3] 18 Pa.C.S.A. §3503(a)(1)(ii).
[4] 18 Pa.C.S.A. §3921(a).
[5] 18 Pa.C.S.A. §3925(a).
[6] 18 Pa.C.S.A. §3304(a)(5). This charge was withdrawn by the Commonwealth.
[7] 18 Pa.C.S.A. §2705. The Court granted Defendant's motion for judgement of acquittal as to this charge.

3

Following a five day trial, a jury convicted the Defendant of Burglary and Conspiracy to Commit Burglary. On April 24, 2015 the Defendant was sentenced to an aggregate 5-10 year term of imprisonment for the burglaries plus a consecutive 2 ½ to five years for the conspiracy to commit burglary. The Defendant's sentence also included an order of restitution, joint and several with Michael Cannon, in the amount of $27,685.53.

On May 1, 2015, the Defendant filed a Post Sentence Motion. Following a hearing on August 24, 2015, the Court denied the motion by order dated August 28, 2015. This appeal followed. By Order of September 14, 2015, the Court ordered the Defendant to produce a concise statement of errors; the Defendant has since complied with this directive.

## II. Issues

The Defendant raises the following issues in his concise statement:

1. Whether the judgment of sentence must be vacated and Appellant discharged because the trial court erred as a matter of law and abused its discretion in failing to set aside the jury's guilty verdicts for burglary and conspiracy to commit burglary, when the trial record is void of any factual findings of what crime was committed inside the residences, or intended to be committed inside, and the jury expressly found that no theft related crimes were committed?

2. Whether the trial court erred as a matter of law in ordering restitution for allegedly stolen items when there is no causal connection between the jury verdict and the alleged losses sustained by the victims, as the jury made specific findings that there were no such losses?

3. Whether the trial court abused its discretion and erred as a matter of law when it denied the Defendant's Batson challenge at the time of jury selection?

4

4. Whether the judgement of sentence must be vacated and Appellant discharged because the record indicates, when compared to Appellant's co-defendant, that Appellant was selectively prosecuted due to his decision to invoke his constitutional right to a jury trial, in violation of his state and federal constitutional rights, as evidenced by the disparaging treatment at the sentencings?

5. Whether the trial court abused its discretion when it considered victim impact testimony at the time of sentencing regarding losses from thefts and persons being present during a burglary, when the jury found that there were no losses from theft and no persons were present at the time of the burglaries?

## III. Discussion

### 1. The jury verdict was proper.

The Defendant's first claim is that the Court should have set aside his convictions for burglary and conspiracy to commit burglary because he was found not guilty of the theft and related charges. This claim fails as a matter of law. The Commonwealth need not prove the underlying crime to sustain a burglary conviction. Commonwealth v. Brown, 886 A.2d 256, 260 (Pa. Super. 2005) (citing Commonwealth v. Lease, 703 A.2d 506 (Pa.Super.1997) (burglary conviction affirmed where defendant was acquitted of the underlying crimes of theft and receiving stolen property because the factfinder could have determined that the defendant entered the residence with the intent to steal but did not consummate the theft after entry.)) "Inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal." Commonwealth v. Stokes, 38 A.3d 846, 855 (Pa. Super. 2011) (quoting Commonwealth v. Petteway, 847 A.2d 713, 718 (Pa.Super.2004) (internal citations omitted)). Rather, "the rationale for allowing inconsistent

5

verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment." Stokes, 38 A.3d at 855 (quoting Commonwealth v. Miller, 657 A.2d 946, 948 (Pa. Super. 1995) (internal citations omitted)). "When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity. Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict." Stokes, 38 A.3d at 855 (citing Petteway, 847 A.2d at 718).

Furthermore, insofar as this claim raises a challenge to the sufficiency of the evidence, it must also fail. In reviewing the sufficiency of the evidence, we are required to view the evidence, and all permissible inferences to be drawn therefrom, in the light most favorable to the Commonwealth, as verdict winner. The test is whether, taking as true the evidence most favorable to the Commonwealth, together with all reasonable inferences therefrom, the evidence is sufficient to prove appellant's guilt beyond a reasonable doubt. Commonwealth v. Ruffin, 463 A.2d 1117, 1118-19 (Pa. Super. 1983) (citations omitted).

A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

> (1) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present;

6

(2) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present;

(3) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense any person is present; or

(4) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present.

18 Pa. C.S.A. § 3502(a).

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903

Instantly, there was sufficient evidence to support the guilty verdicts for burglary and conspiracy to commit burglary. As noted above, the Commonwealth is not required to prove what crime the Defendant intended to commit in order to sustain a conviction for burglary. The inconsistent verdict may simply have been the jury's improper exercise of leniency. There was

7

ample evidence that the Defendant was involved in the burglaries-the car that was at the scene was owned by Rochelle Brown, from whom he rented a room; the Defendant's DNA was found on a water bottle and on a glove that was recovered at or near the crime scenes; his cell phone records placed his phone in the area of the burglaries on the day in question. There was also testimony that the Defendant and two other men travelled to the suburbs specifically to burglarize houses. Therefore, the Court did not err is denying Defendant's motion for judgment of acquittal.

## 2. The Court did not err in ordering restitution.

The Defendant's next contention is that the Court erred in ordering restitution because the Defendant was found not guilty of the theft or receiving stolen property charges. Imposition of restitution is within the sound discretion of the sentencing court and must be supported by record. Commonwealth v. Figueroa, 691 A.2d 487 (Pa. Super. 1997). The record supports the order of restitution and this claim must fail.

Restitution applies only for those crimes to property or person where there has been a loss that flows from the conduct which forms the basis of the crime for which a defendant is held criminally accountable. Commonwealth v. Wright, 722 A.2d 157, 159 (Pa. Super. 1998) (citation omitted). The general rule is that restitution must be properly included in a sentence. Commonwealth v. Dinoia, 801 A.2d 1254 (Pa. Super. 2002). At the time of sentencing the court must specify the amount and method of restitution. In determining the amount and method of restitution, the court:

8

(i)   Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney in accordance with paragraph (4) and such other matters as it deems appropriate.

(ii)   May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just.

(iii)   Shall not order incarceration of a defendant for failure to pay restitution if the failure results from the offender's inability to pay.]

(iv)   Shall consider any other preexisting orders imposed on the defendant, including, but not limited to, orders imposed under this title or any other title.

§ 1106(C)(2).

Evidence adduced at trial indicated the value of the property stolen from both homes. Likewise, the victims testified as to their losses at the sentencing. The losses were calculated based on receipts and other records the victims had for the property stolen. The victims suffered these losses as a direct result of the burglaries committed by the Defendant and his co-conspirators. But for these actions, the victims would have suffered no losses. Therefore, there was a clear causal connection between the burglaries and the suffered losses regardless of the jury's verdict and restitution was properly ordered.

**3. The Court properly denied the Defendant's Batson challenge.**

To establish any merit to a Batson[8] claim, the Defendant must establish a *prima facie* case of improper use of peremptory challenges.

To do so, a defendant must establish that:

---

[8] Batson v. Kentucky, 476 U.S. 79 (1986).

9

(1) the defendant is a member of a cognizable racial group and the prosecutor exercised peremptory challenges to remove members of the defendant's race from the venire; (2) the defendant can then rely on the fact that the use of peremptory challenges permits "those to discriminate who are [of] a mind to discriminate"; and, (3) the defendant, through facts and circumstances, must raise an inference that the prosecutor excluded members of the venire on account of their race. Once the defendant makes a prima facie showing, the burden shifts to the Commonwealth to come forward with a neutral explanation for challenging black jurors.

Commonwealth v. Washington, 927 A.2d 586, 609-10 (Pa. 2007)(citations omitted).

Instantly, the Defendant claims that the Commonwealth improperly used peremptory challenges to remove the remaining two African Americans from the jury. During the individual voir dire of potential juror 12, the following exchange took place:

The Court: Thank you very much for coming back. You answered three questions. I'm going to go in reverse order.

Venire person 12: Okay.

The Court: The first one was that you believe you have an extraordinary or undue hardship. What would that be?

Venire person 12: Well, I just help my mom take care of my dad. He has frontal temporal lobe dementia. I help her take care of him. I wasn't really sure depending on how—

The Court: Here's how we work. We go like 9:00 to maybe 4:30, except for if a jury is deliberating. If a jury is deliberating, they can go into the night. I don't tell the jury what to do when they're deliberating. That's the only time it would take you past that. You know, you have to arrive here about 9:15. There's breaks. You know, generally we quit at 4:30. . . .

The Court: The next one I had was whether you or a very close family member had ever been convicted of a crime. We're not concerned about a close family member. Have you ever been convicted of a crime?

10

Venire person 12: No. No.

The Court: The only—we ask it that way so we don't embarrass people. The only thing we'd be concerned about a close family member is if it was such an impact upon you about the criminal justice system, fairness, or that you couldn't be fair and impartial. Do you believe that the fact that a family member was convicted of a crime would make you not be fair and impartial?

Venire person 12: No, not at all. . .

The Court: And then I asked the question would anybody here be less likely to believe the testimony of a police officer because of his or her job. Your card stayed up. Is that your answer?

Venire person 12: I think—I don't know if I was answering right. I pretty much wouldn't just believe, you know, like it would be fair in my mind. Like I wouldn't count what they said as truth just because they're a police officer.

The Court: That's good.

Venire person 12: And I wouldn't count it as they're lying either, but I would count it—so I don't know if I even answered right.

The Court: So police officer testimony is just the same as yours?

Venire person 12: Right....

The Court: What we're trying to say is you won't be less likely to believe a police officer just because he's a police officer?

Venire person 12: No. No.

The Court: I'll put her into the mix of the hardships, but she's okay for now.

N.T., Jul. 7, 2014 at 57-59.

During the individual voir dire of potential juror 18, the following exchange took place:

The Court: How are you, Reverend?

Venire person 18: Good.

11

The Court: The question that you left out there was a conviction. We are not really concerned about a close family member, but we ask it in case. We don't want to embarrass anybody. Have you ever been convicted of a crime? . . .

The Court: The answer is no?

Venire person 18: No. I've been arrested.

The Court: It's okay. We're only looking for convictions...How about a family member convicted?

Venire person 18: My brother. My brother is presently serving.

The Court: The fact that you have a brother who was convicted of a crime, would that in any way affect your ability in this case to be a fair and impartial juror?

Venire person 18: I'll say I would hope not.

The Court: Well, we can't—... Hope doesn't help us because everybody's guessing, like, oh, geez. . . What disqualifies someone is if the impact or however you feel about your brother's conviction, about the criminal justice system or something like that, or something about the nature or something that triggers you and you go, oh, geez, I didn't think it, but I can't be fair in this case. So the question is you'd have to set it aside and guarantee us that the fact that you had a brother convicted- because that doesn't automatically disqualify you. Can you guarantee us it would not affect your ability to be fair and impartial?

Venire person 18: I would say yes, I could set it aside.

The Court: I got that part. Can you guarantee us, because at this stage you're making an oath to follow the law and the law says nothing will come in, won't trigger anything. So can you guarantee us that the fact you have a brother convicted will not affect your ability to be fair and impartial.

Venire Person 18: (Juror nods.)

N.T., Jul. 7, 2014 at 64-66.

12

Following the individual voir dire, the Commonwealth used peremptory strikes to remove these two potential jurors, at which time the Defendant raised a Batson challenge. The Defendant argued that out of the 45 person pool of potential jurors, only three were African American. Id. at 99-100. One of these jurors was struck for cause, and the other two were struck by the Commonwealth. Id. Following the Defendant's prima facie showing that he is an African American and all African Americans were struck from the Jury, the Commonwealth put forth race neutral reasons for striking these potential jurors.

As to Juror 12, the Assistant District Attorney indicated that she was stricken for "the same reason we brought her back for individual questioning. In both her questionnaire and in court today she indicated that she was less likely to believe the testimony of a police officer solely because they were a police officer." Id. at 101. The Assistant District Attorney further indicated that while the Court had rehabilitated her, he was not confident in her rehabilitation, which was his sole reason for striking her from the jury. Id. at 101-102. He indicated that he was also concerned about her ability to "follow the directions of the Court and/or understand the Court's direction to her." Id. at 102.

As to Juror 18, the Assistant District Attorney indicated "his demeanor when responding the Court's questions individually I lacked confidence in." Id. at 103. The Defendant countered that the potential juror is a man of the cloth and his demeanor when answering questions reflected his thoughtfulness

13

and the Defendant believed the juror was rehabilitated. Id. The Assistant District Attorney indicated that "he is a man of the cloth . . . we don't know what effect that would have on his ability to sit as a juror. That is another reason he was stricken." Id.

Based on the totality of the circumstances, the Court accepted the race neutral reasons for the strikes and determined that the Commonwealth did not use its peremptory strikes to impermissibly strike African Americans from the jury. Therefore, this claim must also fail.

### 4. The Defendant was not selectively prosecuted.

The Defendant's next contention appears to be that, compared to co-defendant, Michael Cannon, he was selectively prosecuted as evidenced by the sentences each Defendant received. This claim is overly vague and is, therefore, waived. Alternatively, this claim is wholly without merit, and must fail.

To establish a claim of selective prosecution, the Defendant must show: "first, (1) that "others similarly situated were not prosecuted for similar conduct;" and (2) that "the Commonwealth's discriminatory selection of them for prosecution was based on impermissible grounds such as race, religion, the exercise of some constitutional right, or any other such arbitrary classification." Commonwealth v. Mulholland, 702 A.2d 1027, 1034 (Pa. 1997) (citation omitted).

In the matter indexed at 6564-12, Michael Cannon has not yet been sentenced. Therefore, the Defendant cannot support a claim that he was

14

selectively prosecuted based upon the "disparaging treatment at the sentencings."

### 5. Victim impact testimony was properly allowed.

Defendant's final contention is the Court abused its discretion by allowing victim impact testimony because the Defendant was found not guilty of the theft charges and the jury specifically found that a person was not present during the burglaries.

At the discretion of the trial court, the Commonwealth may present live testimony of the victim and the victim's family or friends, as well as other evidence such as photographs at sentencing on the relevant sentencing issue of "the gravity of the offense as it relates to the impact on the life of the victim and on the community." Commonwealth v. Penrod, 578 A.2d 486, 491-92 (Pa. Super. 1990); 42 Pa.C.S.A. § 9721(c). "Under our legislature's 'Basic Bill of Rights for Victims[9],' victims of all crimes have the same right to breathe life with all its emotions into their victim impact statements included in the PSI [Pre-sentence Investigation] Report." Id. (citing Commonwealth v. McLaughlin, 574 A.2d 610, 614-615 (Pa. Super. 1990)).

Instantly, the Court heard victim impact statements or testimony members of both families whose homes were burglarized. It is immaterial that the Defendant was not convicted of theft and the jury did not find that a person was present during the burglary. The crimes of burglary and conspiracy to commit burglary had an impact on these families, which they were properly

---

[9] 18 P.S. §11.201

15

allowed to express to the Court. Therefore, this claim is also without merit and must fail.

## IV. Conclusion

Based on the foregoing, the judgement of sentence should be affirmed.

BY THE COURT:

_____

**STEVEN T. O'NEILL       J.**

Copies sent on 11/24/15 to the following:
Robert Falin, Esq. (District Attorney's Office)
John Walko, Esq.
Clerk of Courts

Secretary

16